COSMOPOLITAN MUTUAL INSURANCE COMPANY AND ESSEX COUNTY NEWS COMPANY, NOW DOING BUSINESS AS NEWARK NEWSDEALERS SUPPLY COMPANY AND FRAZIER McCOLLUM, PLAINTIFFS-RESPONDENTS, v. CONTINENTAL CASUALTY COMPANY AND U-DRIVE-IT COMPANY, DEFENDANTS-APPELLANTS.

Argued November 17, 1958—Decided January 5, 1959.

*Mr. Raymond L. Cunneen* argued the cause for defendants-appellants (*Mr. Hugh J. O'Gorman,* on the brief).

*Mr. Philip M. Lustbader* argued the cause for plaintiffs-respondents (*Messrs. Schneider, Lustbader & Morgan,* attorneys).

The opinion of the court was delivered by

PROCTOR, J.    This appeal involves the question of the respective obligations of two insurance companies under their automobile liability policies.

On June 10, 1956 the Essex County News Company hired a truck from U-Drive-It Company. While the truck was being used in the business of the News Company and operated by its employee, McCollum, it was involved in an accident with another vehicle operated by one Frese. Frese sustained personal injuries. Thereafter, he instituted an action for damages against McCollum and the Essex County News Company. At the time of the accident there was in effect a policy issued by the plaintiff, Cosmopolitan Mutual Insurance Company, to the Essex County News Company insuring it against liability for personal injury and property damage with a maximum coverage of $300,000. In addition to motor vehicles owned by the News Company, the policy extended coverage to any non-owned or hired motor vehicles used in its business. Under the omnibus clause of the policy, McCollum, as an employee, was an additional insured. Condition No. 14 of the policy relating to "other insurance" provides:

"If the insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of lia-

bility of all valid and collectible insurance against such loss; *provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis added)

At the time of the accident the U-Drive-It Company was insured under a policy issued by the defendant, Continental Casualty Company. This policy was acquired in accordance with *N. J. S. A.* 45:21–1 *et seq.*, which requires one who engages in the business of renting motor vehicles to carry liability insurance for the benefit of persons suffering loss or damage by reason of the operation of any rented motor vehicle. Although the statutory requirement is for $5,000 for each person and $10,000 for each accident, the limits of the Continental (U-Drive-It) policy are $10,000 and $20,000. The lessee of a motor vehicle and his driver are included as "Insured" under the omnibus clause of this policy. The policy further provides:

"17. Other Insurance.
The insurance under this policy shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise."

Cosmopolitan requested Continental to investigate the Frese claim and defend the action. Continental refused. Cosmopolitan then undertook the defense in behalf of its insured, the News Company and McCollum. At the same time it instituted the present action for declaratory relief in the Superior Court, Chancery Division. The complaint in this action alleged that Continental under its policy with U-Drive-It Company was the primary insurer and therefore should defend against Frese's claim and was obligated to pay any judgment entered against the News Company and McCollum. Continental filed an answer and counterclaim alleging that Cosmopolitan was the primary insurer and therefore it was obligated to defend the Frese suit and pay any judgment Frese might obtain. While the present action was pending, Cosmopolitan settled Frese's claim for $10,000

and incurred defense expenses totalling $1,800. Consequently, Cosmopolitan's case changed from one for declaratory relief to one for reimbursement. Cosmopolitan was given leave in the pretrial order to file a supplemental complaint seeking the above relief, and Continental's answer and counterclaim were accepted as joining issue with the supplemental complaint. The reasonableness of the settlement and expenses is not disputed.

The Chancery Division held Continental liable to pay the amount of the settlement and the expenses, and entered judgment for Cosmopolitan in the sum of $11,800. The court concluded that Essex County News Company obtained Continental's insurance coverage when it hired the truck from U-Drive-It Company; that such coverage was primary because it was required by *N. J. S. A.* 45:21-1. The court further reasoned that under the "other insurance" provision of Continental's policy, "no other valid or collectible" insurance existed because Cosmopolitan's policy was "excess" and not "primary" insurance. Continental appealed and we certified the appeal on our own motion prior to its being heard in the Appellate Division.

There is no dispute that both policies extended coverage to McCollum and Essex County News Company for the accident, and that but for the policy of one of the companies the other would provide them with coverage. The dispute arises from the fact that each policy, insofar as its coverage of the accident is concerned, provides that its insurance "shall be excess insurance over any other valid and collectible insurance." Cosmopolitan contends that the insurance of Continental is "primary" and that its insurance is "excess," and as the settlement was within the limits of Continental's policy that insurer should pay the entire amount. On the other hand, Continental, retreating slightly from its original position, asserts that the "excess" clauses of the respective policies in effect cancel each other out, leaving each insurer with the duty of primary liability to be shared proportionately in such ratio as the respective limits of liability contained in each policy bear to the total

limit of liability of all valid and collectible insurance against such loss. Under this theory Continental would pay one-thirtieth of the settlement and expenses and Cosmopolitan would pay twenty-nine-thirtieths.

Since both policies extended coverage to the tort liability of the News Company and McCollum, the respective liabilities of the two insurance companies must be determined by the terms of the "other insurance" provisions of those policies. Although expressed in slightly varying language, it is clear that each company intended that if there were other insurance covering the loss its coverage would be "excess," *i. e.,* it would not be subjected to liability until the limits of the other policy had been reached. If literal effect were given to both clauses the result would be that neither policy covered the loss. Such a result would produce an unintended absurdity which neither party urges.

Where problems of conflicting "other insurance" provisions have arisen, many courts appear to have assumed that one, but not both, of such provisions must yield in order to establish one policy as the "primary" insurance upon which the "other insurance" provision of the "secondary" policy might operate. *E. g., Hartford Steam Boiler Inspection & Insurance Co. v. Cochran Oil Mill & Ginnery Co., 26 Ga. App.* 288, 105 *S. E.* 856 (*Ct. App.* 1921). Based upon this premise the courts have developed many varied and irreconcilable tests for determining which policy is "primary" and which "secondary." As was said in *Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co.,* 195 *F. 2d* 958, 959 (9 *Cir.* 1952) :

"These decisions point in all directions. * * * Their reasoning appears to us completely circular, depending as it were, on which policy one happens to read first."

Some courts have fixed primary liability on the policy issued first in point of time. *New Amsterdam Casualty Co. v. Hartford Accident & Indemnity Co.,* 108 *F. 2d* 653 (6 *Cir.* 1940); *cf. Automobile Ins. Co. v. Springfield Dyeing Co. Inc.,* 109 *F. 2d* 533 (3 *Cir.* 1940). These decisions have

been criticized, 8 *Appleman, Insurance Law & Practice* § 4914, *p.* 336 (1942), and the "prior in time" test has been expressly rejected. *McFarland v. Chicago Exp.*, 200 *F. 2d* 5, 7 (7 *Cir.* 1952); *Zurich General Accident & Liability Ins. Co. v. Clamor*, 124 *F. 2d* 717, 719 (7 *Cir.* 1941). In our view, it is immaterial which policy was written first. Both were in effect when the accident occurred and liability attached to each policy simultaneously.

It has been held that the policy issued to the tortfeasor is the primary insurance. *Maryland Casualty Co. v. Bankers' Indemnity Ins. Co.*, 51 *Ohio App.* 323, 200 *N. E.* 849 (*Ct. App.* 1935); *American Automobile Ins. Co. v. Penn Mutual Ind. Co.*, 161 *F. 2d* 62 (3 *Cir.* 1947). This doctrine appears to be artificial and arbitrary. It was the intent of each insurer to cover the tortfeasor whether he was expressly named in its policy or was an additional insured under its omnibus clause. It we should follow these cases the entire loss would be placed upon Cosmopolitan, a result which is not even contended for by Continental.

There are other cases which undertake to decide which policy's coverage is more specific, holding the one thought more specific to be primary. *Hartford Steam Boiler Inspection & Insurance Co. v. Cochran Oil Mill & Ginnery Co.*, *supra; Trinity Universal Ins. Co. v. General Accident, Fire & Life Assur. Corp.*, 138 *Ohio St.* 488, 35 *N. E. 2d* 836 (*Sup. Ct.* 1941). This, too, seems to be an arbitrary distinction in the field of automobile liability insurance as it ignores the "other insurance" provisions of the respective policies. See *Consolidated Shippers, Inc. v. Pacific Employers Ins. Co.*, 45 *Cal. App. 2d* 288, 114 *P. 2d* 34 (*D. C. App.* 1941). In any event, in the present case the two policies appear to us to be equally specific. Each would furnish coverage if the other did not exist. The Continental policy insured the specific truck involved in the accident. On the other hand, the Cosmopolitan policy specifically insured Essex County News Company which was responsible for the accident under the doctrine of *respondeat superior.* See *Oregon Auto Ins. Co. v. United States Fidelity &*

*Guaranty Co., supra.* Cosmopolitan contends that as it had limited its coverage in more specific terms than Continental, the latter policy should be considered primary insurance. This is based upon the fact that Cosmopolitan's policy is limited in its liability to excess insurance specifically in the case of a hired or non-owned vehicle, while the Continental policy provides generally that it is excess insurance. We do not agree with this contention. Both policies evidence the same intent with respect to insuring the risk and also with respect to avoiding liability in the event of adequate coverage by another carrier. Where the intent is clear, the fact that one of the insurers stated its intent more specifically than the other is not significant. See 52 *Colum. L. Rev.* 1063 (1952).

Cosmopolitan further contends that "Insurance issued to a vehicle owner is primary insurance," relying upon *American Surety Co. v. American Indemnity Co.,* 8 *N. J. Super.* 343 (*Ch. Div.* 1950). In that case the plaintiff insurer had issued an automobile liability policy covering certain vehicles of one Feller with the provision that replacement vehicles were covered under "excess" insurance. Feller borrowed a truck from Ritter and Sussman and injured a third party. The defendant had issued an automobile liability policy on Ritter and Sussman's trucks with the provision that where other insurance was available it would pro-rate any loss. The latter policy contained an omnibus clause which extended coverage to Feller as a borrower of the truck. The Chancery Division held that the defendant had the primary liability, and that the plaintiff's liability was excess and did not arise until the limit of the defendant's policy was exceeded. The pro-rata clause in the defendant's "other insurance" provision was deemed inapplicable since the excess insurance under the plaintiff's policy was not "other insurance" available to the insured until the defendant's liability had been exhausted. The holding is not as broad as Cosmopolitan asserts it to be, *i. e.,* that the policy of the owner of the vehicle involved in the accident is primary insurance. The case merely follows the

general rule that where an excess clause and pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the pro-rata policy the primary insurance. See *McFarland v. Chicago Exp.*, *supra; American Surety Company of New York v. Canal Ins. Co.*, 258 *F.* 2d 934 (4 *Cir.* 1958); *Indemnity Insurance Company of North America v. Metropolitan Casualty Insurance Company of New York*, 53 *N. J. Super.* 90 (*Ch.* 1958); 22 *Insurance Counsel Journal* 404 (1955); Annotation, 46 *A. L. R.* 2d 1163 (1956). However, the reasoning employed in a pro-rata against excess situation has no applicability to the present case where each policy contains an "excess" clause. If we should accept plaintiff's contention that the owner's policy is primary, we would be compelled to completely disregard the excess clause of that policy. Cosmopolitan's theory is directly opposed to the cases imposing primary liability upon the policy issued to the tortfeasor and appears to be equally artificial and arbitrary. There is no reason to give absolute effect to a provision in one policy while ignoring a similar provision in the other. Both clauses should occupy the same legal status.

█ As applied to the facts of the present case, both policies provide that they shall be "excess" insurance. However, it is obvious that there can be no "excess" insurance in the absence of "primary" insurance. Since neither policy by its terms is a policy of "primary" insurance, neither can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses. We think that such a conclusion affords the only rational solution of the present dispute. This view is supported by the following authorities: *Continental Casualty Co. v. Buckeye Union Casualty Co.*, 143 *N. E.* 2d

169 (*Ohio Ct. Com. Pleas* 1957); *Continental Casualty Co. v. St. Paul Mercury Fire & Marine Ins. Co.,* 163 *F. Supp.* 325 (*D. C. S. D. Fla.* 1958); *Employers Liability Assurance Corp. v. Pacific Employers Ins. Co.,* 102 *Cal. App. 2d* 188, 227 *P. 2d* 53 (*D. C. App.* 1951); *Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., supra; Weddell v. Road Transport & Gen. Ins. Co.,* [1932] 2 *K. B.* 563. *Cf. Zurich General Accident & Liability Ins. Co. v. Clamor, supra.* See also *Note,* 38 *Minn. L. Rev.* 838 (1954); 26 *S. Cal. L. Rev.* 331 (1953); 55 *Harv. L. Rev.* 1218 (1942).

■ The fact that U-Drive-It Company is required by statute to furnish insurance protection does not militate against our conclusion. The statute, *N. J. S. A.* 45:21–1 *et seq.,* requires that one engaged in the business of renting motor vehicles shall file with the clerk of the municipality where he resides or has his place of business a policy of liability insurance for the benefit of persons suffering loss or damage by reason of the operation of such motor vehicles. The insurance policy is required to provide coverage of $5,000 for injury to one person and $10,000 for injuries to two or more persons in any one accident. The purpose of the statute is to protect the public from the irresponsibility of persons operating hired motor vehicles on our highways. Clearly, when U-Drive-It Company obtained liability insurance (in this case in a greater amount than the statutory requirement) and filed its policy with the municipality, the interest of the public was secured. The statute does not require that a policy issued in compliance therewith be primary insurance. As already noted, had Cosmopolitan's policy not been in force, Continental would have been liable for the entire amount of the settlement. The coverage contemplated by the statute is satisfied and the public is protected within the statutory terms. The question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk. *Continental Casualty Co. v. Weekes,* 74 *So. 2d* 367, 46 *A. L. R. 2d* 1159 (*Fla. Sup. Ct.* 1954); *Celina Mutual Casualty Co.*

*v. Citizens Casualty Co.,* 194 *Md.* 236, 71 *A.* 2*d* 20, 21 *A. L. R.* 2*d* 605 (*Ct. App.* 1950). *Cf. Savery v. Kist,* 234 *Iowa* 98, 112, 11 *N. W.* 2*d* 23, 29 (*Sup. Ct.* 1943).

■■ Having concluded that the plaintiff and the defendant should share in the amount of the settlement and expenses, the remaining question is what portion of that total each must bear. Continental argues that the parties should pro-rate their liability on the basis of the limits of liability of each policy. Neither policy expressly provides for this type of pro-rating where a hired or non-owned vehicle is involved. Cosmopolitan's policy provides for pro-rating in other circumstances. Continental's policy has no such provision in any case. It is commonly known that the cost of liability insurance does not increase proportionately with the policy limits. The cost of increased limits is relatively small when compared to the cost of minimum coverage. The manner of contribution urged by Continental has recently been rejected. *Insurance Co. of Texas v. Employers Liability Assur. Corp.,* 163 *F. Supp.* 143 (*D. C. S. D. Cal.* 1958). In that case the court pro-rated liability according to the premiums paid the respective companies. Although this latter test initially commends itself, upon reflection it appears that unless the insureds are in identical circumstances, there are too many variables affecting the premiums to permit them to form an adequate basis for an equitable adjustment, *e. g.,* fleet insurance. We therefore conclude that as both companies stand on an equal footing equity requires an equal apportionment of the amount of the settlement and expenses. The judgment will accordingly be modified so as to require Continental to pay one-half of the settlement and expenses.

*For modification*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—Justice WACHENFELD—1.