72 N.J. Super. 369 (1962)
178 A.2d 372
LONDON AND LANCASHIRE INSURANCE COMPANY, LTD. (SAFEGUARD INSURANCE COMPANY), A CORPORATION AND ANGELINA BELLOMO AND CHARLES BELLOMO, PLAINTIFFS,
v.
ALLSTATE INSURANCE COMPANY, A CORPORATION, AND JOSEPH P. McDERMOTT, JR., AN INFANT BY HIS GUARDIAN AD LITEM, JOSEPH P. McDERMOTT, SR., JOSEPH P. McDERMOTT, SR., AND PATRICIA McDERMOTT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 19, 1962.
*370 Messrs. Hein, Smith & Mooney, attorneys for plaintiffs.
Messrs. Marley, Winkelried & Hillis, attorneys for defendants.
PASHMAN, J.S.C.
This case was submitted to the court upon a stipulated statement of facts. It concerns the construction of two insurance policies. The plaintiff, London and Lancashire Insurance Company, Ltd. ("London"), through one of its subsidiary carriers, Safeguard Insurance Company, insured a 1953 Ford belonging to one Angelina Bellomo. On September 18, 1958 Charles Bellomo, son of the aforementioned insured, borrowed his mother's car with her permission. He was involved in an accident in North Bergen, New Jersey, causing injuries to one Joseph P. McDermott, Jr. Subsequently, McDermott instituted a suit against the Bellomos in the Superior Court, Law Division, seeking to recover damages for injuries sustained in the September 18th accident.
Charles Bellomo duly notified London of the accident and London undertook the defense of the Bellomos in the McDermott action. The matter was amicably settled.
*371 London has maintained, from the time it obtained knowledge of the McDermott accident, that the defendant, Allstate Insurance Company ("Allstate"), was jointly and equally liable with London for the costs of the McDermott settlement. Allstate admits insuring a 1955 Plymouth belonging to Charles Bellomo, but argues that under the pertinent provisions of Charles Bellomo's insurance policy with it, Allstate is an excess insurer; as such, it is under no obligation to reimburse London in any amount, since the settlement of the McDermott action was within the policy limits of London's insurance policy issued to Angelina Bellomo.
London candidly concedes that Charles Bellomo was an additional insured under his mother's policy by reason of the following language which is found in Part I, "Persons Insured," section (a) (2) of the plaintiff's policy with Angelina Bellomo:
"The following are insureds under Part 1:
(a) With respect to the owned automobile,
(1) * * *
(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured; * * *"
The dispute between London and Allstate centers around an interpretation of the following language in their respective policies:

A. London's Policy:

"Other Insurance: If the insured has other insurance against a loss covered by Part 1 of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

B. Allstate's Policy:

"Allstate shall not be liable under this Part 1 for a greater proportion of any loss than the applicable limit of liability stated on the *372 Supplement Page bears to the total applicable limit of liability of all collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance."
London avers that since Charles Bellomo was driving a non-owned automobile, both London and Allstate were excess insurers and under Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959), each was equally liable for the costs of the McDermott settlement. Allstate argues, on the other hand, that London's excess insurance provision does not apply in the factual pattern of this case and that London, as the primary insurer, is not entitled to any contribution or reimbursement from Allstate.
The first dispositive declaration of judicial attitude pertaining to the issue sub judice is found in American Surety Co. of N.Y. v. American Indem. Co., 8 N.J. Super. 343 (Ch. Div. 1950), decided by the late Judge Jayne. Factually, the plaintiff insurer insured M. Feller, Inc., who borrowed a truck from a partnership which was insured by the defendant insurance company. An accident occurred while the truck was being operated by one of Feller's employees. The defendant insurer maintained that it was the excess carrier. Judge Jayne, after reviewing the pertinent provisions of the plaintiff's and defendant's policies, decided that:
"I shall hold that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, the owner's insurer has the primary liability. In such a situation, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It follows that the so-called other insurance clause in the primary policy excluding or modifying liability if the additional insured has other valid and collectible insurance is inapplicable because the insurance under the excess coverage policy is not to be regarded as other collectible insurance available to the insured until the primary policy has been exhausted.
Expressed more explicitly, I resolve that a non-ownership clause with an excess coverage provision as embodied in the plaintiff's policy *373 does not constitute other valid and collectible insurance within the import and meaning of a primary policy with an omnibus clause." (8 N.J. Super., at pp. 349-50.)
See also N.J. Asphalt & Paving Co., Inc., v. Mutual Boiler Ins. Co., 19 N.J. Super. 445, 448-49 (Law Div. 1952).
The central theme which pervades London's argument in the instant case is that the present factual pattern falls within the holding of the Cosmopolitan case. I am of the opinion that a review of the facts in that case reveals a basic error in London's proposed premise. The plaintiff insurer in Cosmopolitan insured A, and the defendant insurance company insured B. An employee of A, while driving one of B's cars, injured C. The plaintiff's policy, in its omnibus clause, provided that A's employee was an additional insured and that said policy was excess insurance if the insured was operating a non-owned vehicle at the time of an accident. 28 N.J., at pp. 556-57. The applicable provisions of the defendant's policy stated that: "The insurance * * * shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under another policy or otherwise." 28 N.J., at p. 557. Justice Proctor rejected the plaintiff's argument that American Surety Co. of N.Y. v. American Indem. Co., supra, held that the policy of an owner of a vehicle is always primary insurance, stating that
"* * * The case merely follows the general rule that where an excess clause and a pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the pro-rata policy the primary insurance. * * *" 28 N.J., at pp. 561-62
The court then held that
"* * * However, the reasoning employed in a pro-rata against excess situation has no applicability to the present case where each policy contains an `excess' clause. * * *
As applied to the facts of the present case, both policies provide that they shall be `excess' insurance. However, it is obvious that *374 there can be no `excess' insurance in the absence of `primary' insurance. Since neither policy by its terms is a policy of `primary' insurance, neither can operate as a policy of `excess' insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. * * *" 28 N.J., at p. 562 (emphasis added)
The preceding language indicates that Cosmopolitan merely held that where there are two applicable, mutually repugnant and inconsistent excess insurance provisions, both insurance companies are primary insurers. Cf. London, etc., Ins. Co., Ltd. v. Government Employees Ins. Co., 66 N.J. Super. 269 (Ch. Div. 1961).
The crux of the distinction between the facts in Cosmopolitan and the facts in the instant case is that there is an absence of mutually repugnant excess coverage clauses in the case presently before the court. This conclusion is based upon the fact that London's excess insurance clause in its "Other Insurance" section is not applicable since London's insured, i.e., Charles Bellomo, was not using a non-owned automobile. He was therefore an additional insured covered by the primary insurance.
Two matters still remain which merit some consideration. London maintains that its excess insurance provision became operative and effective because Charles Bellomo was operating a non-owned automobile. To justify its conclusion, London places great reliance upon a differentiation between the terms "named insured" and "the insured," as they are found in London's policy with Angelina Bellomo. London argues that the term "the insured" is all-inclusive, and that since its "Other Insurance" clause speaks in terms of "the insured" and Charles Bellomo was not operating a vehicle which was owned by him, it inexorably follows that the conclusion advanced by it is correct.
Judicial ascertainment of the intent of contracting parties depends upon a reasonable construction of the contract language.
*375 "The tokens of intention are to have a reasonable interpretation, taken and compared together in the context of the circumstances. A contract is an agreement resulting in obligation enforceable at law. * * * The writing is to have a reasonable interpretation. Disproportionate emphasis upon a word or clause or a single provision does not serve the object of interpretation. The general purpose of the agreement is to be considered in ascertaining the sense of particular terms. The literal sense of particular words or clauses may be qualified by the context and given the meaning that comports with the probable intention. It is the revealed intention that is to be effectuated, the sense that would be given the integration by a reasonably intelligent person. * * *"
West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958). See also Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 386-87 (E. & A. 1947).
In the case sub judice a reasonable interpretation of London's "Other Insurance" clause leads to the conclusion that London intended, at the time the contract was made, that the term "non-owned automobile" was to relate to the party with whom the contract of insurance was made. Indeed, London's insurance policy provides, in Part I, that a non-owned automobile is one that is not owned by the named insured. Thus, the vehicle driven by Charles Bellomo was not a non-owned automobile under London's policy with Angelina Bellomo. If London had intended differently, all it had to do was to specifically provide that where an additional insured is driving the named insured's automobile said policy would be excess insurance. Introduction by the insurer of greater specificity into a contract of insurance is by no means an atypical occurrence in the drafting of insurance contracts.
This finally brings me to London's assertion that the court in London, etc., Ins. Co., Ltd. v. Government Employees Ins. Co., supra, erroneously construed the opinion of the Supreme Court in the Cosmopolitan case. I am of the opinion that Judge Mintz correctly stated the applicable legal principles in the Government Employees case, and that in any event, this court is not the proper forum to correct *376 the alleged errors of another trial court. Our appellate courts were created for just that purpose.
Based upon the preceding review of the legal principles and the conclusions reached thereunder, London was the primary insurer, as between it and Allstate, and since the settlement effectuated by London was within the limits of its policy, Allstate is not obligated to reimburse London in any amount. Judgment for defendant.