192 N.J. Super. 133 (1983)
469 A.2d 41
HERBERT PASKER, PLAINTIFF,
v.
HARLEYSVILLE MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT, AND INDUSTRIAL RISK INSURERS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 1983.
Decided November 16, 1983.
*135 Before Judges BISCHOFF and PETRELLA.
Cooper, Perskie, April, Niedelman, Wagenheim & Weiss, attorneys for appellant (Mary J. Maudsley on the brief).
Gerard P. Harney, attorney for respondent.
The opinion of the Court was delivered by BISCHOFF, P.J.A.D.
This appeal by Harleysville Mutual Insurance Company raises issues relating to the right of one insurance company, upon paying its insured for a loss sustained by fire to recover contribution from another insurer which had issued a policy covering the same loss where both policies contain substantially similar "Other Insurance" clauses.
The facts relating to the issues raised are not disputed. Herbert Pasker was the equitable owner in possession of a building owned by American Stores, pursuant to a contract of sale. The contract was signed Sept. 11, 1978; the price was $175,000 with settlement to take place within 60 days of the signing of the agreement. Pasker obtained fire insurance covering his interest in the building in the amount of $175,000, and on its contents in the amount of $128,000 from Harleysville.
The seller also carried fire insurance on the building under a policy covering this building and others that it owned. The insurer on this policy was Industrial Risks Insurers (IRI).
On Oct. 31, 1978, prior to settlement, a fire occurred which completely destroyed the building and contents. Pasker filed suit against both Harleysville and IRI requesting payment under either or both policies. Both insurance companies filed answers to plaintiff's complaint and crossclaimed against each other for indemnification and contribution. Harleysville paid plaintiff the full amount of its policy for the building and $50,000 for the lost contents. Harleysville then moved for a summary judgment on its crossclaim for indemnification and *136 contribution. The trial judge denied the motion. Pasker's claim against IRI was then settled for $60,000 and the trial judge dismissed Harleysville's claim against IRI with prejudice. Harleysville appeals from the denial of its motion for summary judgment and the dismissal of its crossclaim against IRI.
Harleysville first contends that "When property which is the subject of a contract of sale is destroyed by fire after the signing of the contract and before settlement, the proceeds of any insurance maintained by the vendor are subject to a constructive trust in favor of the purchaser" and the proceeds of the vendor's insurance are to be applied to the vendee's benefit to reduce the purchase price with any surplus payable to the vendee by the vendor, citing Coolidge & Sickler, Inc. v. Regn, 7 N.J. 93 (1951); Millville Aerie, F.O. of E. v. Weatherby, 82 N.J. Eq. 455, 457-458 (Ch. 1913); P.R. DeBellis v. Lumbermen's Mutual Casualty Co., 77 N.J. 428, 438 n. 2 (1978). Harleysville then concludes this contention stating "Therefore the proceeds from the policy of insurance issued by IRI to which Acme [American Stores] has a claim are impressed with a constructive trust in favor of Pasker and Harleysville, as Pasker's subrogee."
We agree that under the authorities cited the vendee under a valid contract of purchase becomes the equitable owner of the property, the vendor retaining legal title as security for the unpaid purchase price. Further, that the proceeds of any policy of insurance where loss has occurred subsequent to the execution of the contract, inures to the benefit of the vendee. The vendor, as trustee, holds the money as representing the property that has been destroyed. DeBellis, supra, 77 N.J. at 438 n. 2. It does not follow however that the principles of subrogation are applicable to confer upon Harleysville any rights to the funds as Pasker's subrogee.
It is a general principle of subrogation that an insurer, upon paying a loss suffered by a victim of a tortfeasor's negligence, is subrogated to the victim's right of action against the person responsible for the loss. The basic principles of subrogation *137 are explained by the Supreme Court in Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550, 560-561 (1981) as follows:
Subrogation may exist by virtue of (1) an agreement between the insurer and the insured, 44 Am.Jur.2d, Insurance, § 1820 at 746, (2) a right created by statute, 16 Couch on Insurance 2d, § 61:6 at 240 (1966), or (3) a judicial "device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954); Ambassador Ins. Co. v. Montes, 76 N.J. 477, 484 (1978). The underpinning of subrogation is its derivative nature. The insurer obtains only the right of the insured against the tortfeasor subject to defenses of the wrongdoer against the insured. Hartford Fire Ins. Co. v. Riefolo Constr. Co., 81 N.J. 514, 523 (1980). The general rule has been stated as follows:
Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. This principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter. [44 Am.Jur.2d, Insurance, § 1821 at 748].
To the same effect see 6A Appleman, Insurance Law and Practice, § 4051 at 103-127 (1942); 16 Couch on Insurance 2d. § 61.36 at 260-262 (1966).
Therefore, the rights of the insured beneficiary, the subrogor, become the rights of the subrogated insurer. No additional rights are created. No new cause of action comes into existence. Furthermore, it is immaterial whether the subrogor's cause of action is created by statute, arises because of judicially ascribed equities or exists because of a conventional agreement of the parties. A & B Auto Stores, Inc. v. City of Newark, 103 N.J. Super. 559, 569-570 (Law Div. 1968).
Appellant does not explain how the principles of subrogation are applicable here. There is no third-party tortfeasor in the case responsible for the loss paid to plaintiff by Harleysville. IRI cannot be likened to a tortfeasor whose wrongful act caused both the loss and Harleysville to pay, engendering a subrogation right.
Harleysville contends that Hartford Fire Ins. Co. v. Riefolo Constr. Co., 161 N.J. Super. 99 (App.Div. 1978), aff'd 81 N.J. 514 (1980) stands for that proposition declaring "A party obligated under a contract of insurance to be responsible for a loss to an owner of a property, may be a proper defendant in a subrogation action." Harleysville's reliance on that case is misplaced. That case involved an action brought by *138 the insurer of a school board as subrogee against the contractors and their bonding companies asserting the contractual liability of the prime contractors to repair and replace damage caused by fire to a school building when the building was more than 90% but less than 100% completed. We there held that the owner's insurer could maintain a subrogation claim based on breach of a contractual obligation between the insured school board and the third-party contractors.
The facts of this case do not establish that IRI was a tortfeasor or that the payment by Harleysville was caused by the breach of any independent contractual undertaking owed Pasker by IRI. The principles of subrogation are not applicable.
Harleysville claims it is entitled to indemnification or, in the alternative, pro-rata contribution from IRI for the amounts it paid Pasker. The trial judge, in ruling on this issue, said:
Both policies have provisions stating that should other insurance exist, that policy would be in excess of the other insurance. The Harleysville policy, however, being specific in nature seems most logically the primary policy in this case. The Industrial policy provided blanket coverage for all properties owned by or within the control of American Stores Company and its subsidiary or related companies, of which American Stores Realty Company is one. The Harleysville policy is specific as to location and the object that is covered. It is also the policy secured by the custodian of the property. Counsel for Harleysville imply that this Court should perhaps not credit application of the "Guiding Principles" of the insurance industry. However, it is the Court's impression that such do warrant the conclusion that the Harleysville policy is primary and that it cannot collect from Industrial.
The other insurance clause of Harleysville's policy provides:
(a) If at the time of loss there is other insurance written in the name of the insured upon the same plan, terms, conditions and provisions as contained in this policy, herein referred to as Contributory Insurance, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such loss.
(b) If at the time of loss there is other insurance as described in (a) above, the Company shall not be liable for any loss hereunder until:
(1) the Liability of such other insurance has been exhausted and (2) then for only such amount as may exceed the amount due from such other insurance, whether collectible or not.
And, the policy of IRI provides as to other insurance:
Except for insurance described in any contributing insurance clause elsewhere a part of this policy or in the excess insurance clause, this Policy shall be excess of *139 the amount recoverable from any other insurance covering the same perils or to the extent that coverages under this Policy may differ from those provided by such other insurance, if any.
The Guiding Principles for Overlapping Insurance Coverage is a document adopted and used by the insurance industry to resolve disputes between insurance companies when the applicable policies have conflicting "other insurance" clauses. The purpose of the Guiding Principles is stated as follows:
These Principles provide for the equitable distribution of available insurance. As among insurance companies, the "other insurance" clause(s) which is (are) contained in a policy(ies) of insurance, and which may include an excess provision shall be set aside and be inoperative to the extend that it is (they are) in conflict with the purpose of these Principles. Otherwise, these Principles will not change coverage or other conditions under any policy(ies) of insurance.
The following standards contained in the "Guiding Principles" are pertinent to the resolution of the issues presented here:
GENERAL PRINCIPLES
1. Insurance covering same property and same interest:
A. Insurance covering a specifically described article or object, whether or not for an express amount, at a designated location[1] shall be primary to any other insurance.[2] (See Notes 1 and 2).
B. Insurance covering a specifically described article or object, whether or not for an express amount, without designation of location shall be excess as to "1-A" but primary as to any other insurance.[2] (See Notes 1 and 2).
C. Insurance covering a specifically described group or class of related articles or objects, whether or not for an express amount, at a designated location shall be excess as to "1-A" and "1-B" but primary as to any other insurance.[2] (See Notes 1 and 2).
D. Insurance covering a specifically described group or class of related articles or objects, whether or not for an express amount, without designation of location shall be excess as to "1-A" "1-B" and "1-C" but primary as to any other insurance.[2] (See Notes 1 and 2).
An analysis of the two "other insurance" clauses here involved is not productive because of their substantially similar provisions. They are in conflict and any attempt at their application to the problem here presented necessitates circular reasoning. It is not disputed that both Harleysville and IRI are signatories to the "Guiding Principles". Under the circumstances we see no reason why reference should not be made to that document which the insurance industry has prepared to resolve precisely *140 such situations. Application of the General Principles quoted above establishes Harleysville's policy as primary and IRI's as excess.
Harleysville argues that the policies do not qualify under the General Principles as other insurance contending the term "other insurance" refers only to another policy of insurance held by and in favor of the same person. It argues where, as here, the vendor and vendee have separate interests the principles have no application. We find nothing in the policies of insurance, the Guiding Principles or the authorities cited by appellant to support this argument and we decline to adopt it.
The Guiding Principles define blanket policy as:
Blanket  (Casualty)  When a policy covers at a stated location and any number of other unstated or non-scheduled locations as well, it is said to be "blanket." (Fire and Inland Marine)  When a single amount of insurance covers several unrelated items, the policy is said to be written "blanket." (Emphasis supplied.)
The trial judge properly characterized IRI's policy as blanket and that of Harleysville as specific. The general rule is stated in 6 Appleman, Insurance Law and Practice, § 3912 at 486-489 (1972) to be that blanket policies are excess only, over and above specific insurance, and are not considered for the purpose of prorating a loss.
Appellant contends that the case of Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959) establishes a contrary rule in New Jersey and argues that under the holding of that case when conflicting excess clauses found in each insurance policy are mutually repugnant they must be disregarded, resulting in proration between the two insurers who must share equally up to the limits of their policies. We disagree with that reading of the Cosmopolitan case. In that case, Justice Proctor speaking for the court, said that since neither policy, by its terms was a policy of "primary insurance" neither could operate as "excess" hence the general coverage of each policy applied and each insurer was obligated to share in the cost of settlement and the expenses of the injured party. Cosmopolitan, supra, 28 N.J. at 562.
*141 This case is to be distinguished from Cosmopolitan in that here, because the parties are signatories to the Guiding Principles, the application of those principles establishes the Harleysville policy as primary.
The Cosmopolitan case is readily distinguishable on still another basis. The court there expressed dissatisfaction with various arbitrary tests used previously by the courts to determine the character of insurance policies as primary or excess. Nevertheless, the court applied the specificity test and found both policies before it specific, precipitating the decision to require proration. 28 N.J. at 560. Here the policies are not equally specific. The IRI policy covers all properties, past, present and future that are or may be owned by American Stores wherever situate. It covered many premises in many states. The Harleysville policy, on the other hand, covered but one building and its contents at one location. The IRI policy cannot be termed specific while the Harleysville policy can be so described.
We conclude the trial judge did not err in denying defendant's motion for summary judgment and in entering a judgment dismissing the crossclaim of Harleysville, with prejudice.
Affirmed.