**COMMERCIAL UNION INSURANCE CO., Appellant,**

v.

**BITUMINOUS CASUALTY CORP.**

No. 87–5826.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
May 6, 1988.

Decided July 7, 1988.

Vincent R. McGuinness, Jr., Cozen and O'Connor, Westmont, N.J., for appellant.

Robert M. Kaplan, Slimm, Dash & Goldberg, Westmont, N.J., for appellee.

Before GIBBONS, Chief Judge, MANSMANN and COWEN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this diversity case, we are called upon to determine whether principles of subrogation alone will support summary judgment in this dispute between separate carriers of insurance, indemnifying separate named policyholders, but allegedly covering the same insurable interest against damage to the same property. We find that the lack of a subrogation right derivative from its insured does not preclude an insurer from pursuing an action for contribution against another insurer allegedly liable for the same loss. Accordingly, principles of subrogation are not dispositive and we will reverse the order of the district court and remand for further proceedings.

### I.

In January, 1986, the owner of the Marlton Shopping Center in Marlton, New Jersey, Kode Development Associates, entered into an agreement with Arnko Builders, Inc. in which Arnko Builders was set forth as the general contractor for the construction of the shopping center. Arnko Builders, Inc. subcontracted with Pharaoh Construction Company to perform masonry work for the project.

The agreement between Kode Development and Arnko Builders was a standard American Institute of Architects agreement which provided in pertinent part:

> The owner and contractor waive all rights against each other and the subcontractors ..., for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the work.
>
> Article 11.3.6.

The plaintiff, Commercial Union Insurance Company, issued Kode Development an "all risk" builders insurance policy which provided blanket coverage for buildings and contents. The defendant in this case, Bituminous Casualty Corporation, issued to Pharaoh an inland floater policy which provided specific peril coverage for a one-story masonry building Pharaoh was constructing at the Marlton Shopping Center for Kode Development.

On March 19, 1986 a heavy windstorm caused the collapse of that masonry building. Pharaoh submitted a claim to Bituminous Casualty, which began to process the claim, but ultimately denied primary coverage. A claim was subsequently submitted by Kode Development to Commercial Union who paid its insured (Kode Development) for the loss but reserved the right to seek contribution or indemnity from Bituminous Casualty.

Commercial Union then filed this declaratory judgment action against Bituminous Casualty, seeking a declaration that Bituminous Casualty was liable for contribution or indemnity for the loss. On cross-motions for summary judgment, the United States District Court for the District of New Jersey held that the American Institute of Architects contract acted as a waiver of subrogation rights and barred action for contribution or indemnity. Summary judgment in favor of Bituminous Casualty was granted and this appeal followed.

## II.

■ Our standard of review upon the grant of summary judgment is plenary.

On review, an appellate court is required to apply the same test the district court should have utilized initially. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment shall be rendered if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). As a federal court exercising diversity jurisdiction, we are bound in this case to follow the law as decided by the highest court of the State of New Jersey. The decisions of lower appellate courts may be persuasive, should be accorded proper regard and are presumptive evidence of state law. *See, e.g., Safeco Insurance Company of America v. Wetherill,* 622 F.2d 685 (3d Cir.1980); *National Surety Corp. v. Midland Bank,* 551 F.2d 21 (3d Cir.1977).

## III.

The district court was persuaded to grant summary judgment in favor of Bituminous by the argument that Article 11.3.6 of the American Institute of Architects Agreement between the owner and the general contractor waived all rights of the owner as against the subcontractor. The district court reasoned that, therefore, Commercial Union could not have derived from its insured the right to proceed against either Pharaoh or its insurer by way of subrogation. We find that the district court's disposition of the subrogation question is correct, but that it is not dispositive of Commercial Union's claim and therefore cannot support the district court's order for summary judgment.

■ It is well established under New Jersey law [1] that the underpinning of subrogation is its derivative nature. The insurer who pays for a loss obtains the insured's right of action against a third party ultimately responsible for the loss. *Hartford Fire Insurance Co. v. Riefolo Construction Co.,* 81 N.J. 514, 410 A.2d 658 (1980). The third party may be a tort-

---

**1.** The parties agree that in this diversity action, jurisdiction in the United States District Court for the District of New Jersey was proper and that New Jersey law would apply.

feasor, *Id.*, or a contractual obligor, *Dome Petroleum Ltd. v. Employers Mutual Liability Insurance Co. of Wisconsin*, 767 F.2d 43, 46 (3d Cir.1985). In a commercial setting, a subrogated claim may be asserted against any third party who bears the ultimate risk of loss, however such responsibility arises. *Id.*

In *Pasker v. Harleysville Mutual Insurance Co.*, 192 N.J.Super. 133, 469 A.2d 41 (1983), as in the instant case, two insurance companies indemnified separate insureds against the same risk to the same property. The New Jersey appellate court held in *Pasker* that the principles of subrogation are inapplicable where there is no third party responsible for the loss, and that an insurance company which did not pay could not "be likened to a tortfeasor whose wrongful act caused both the loss and [the other insurer] to pay, engendering a subrogation right." 192 N.J.Super. at 137, 469 A.2d 41.

Courts considering the version of the AIA contract under consideration here have concluded essentially that the contract operates to shift to the owner the ultimate risk of loss which is then transferred to the insurer for valuable consideration, leaving the insurer no right to proceed by subrogation against a subcontractor with respect to property loss. *See e.g., Haemonetics Corp. v. Brophy & Phillips Co., Inc.*, 23 Mass.App. 254, 501 N.E.2d 524 (1986) (citing cases).

■ Article 11.3.1 of the agreement specifies that the owner must procure property insurance for the site which covers the interests of the owner, the contractor and the subcontractors. Under Article 11.3.6, the owner and the contractor waive all rights against the subcontractors for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to the agreement, or other property insurance applicable to the property. The policy underlying Article 11.3.6 is the avoidance of disputes among construction project participants. *Id.*, 501 N.E.2d at 526. We agree that this policy is best effectuated by interpreting the clause as effectively abrogating any subrogation right of the owner's insurer against the subcontractor.

This case involves no third party tortfeasor or other obligor responsible to the owner for the loss Commercial Union could not have derived from its insured any right to proceed against either Pharaoh or its insurer by way of subrogation.

This determination is not dispositive of this action, however, because Commercial Union seeks a declaration that it has a *direct* right against Bituminous for contribution or indemnity. We must consider whether, under the governing New Jersey law, Bituminous is entitled to summary judgment on Commercial Union's claim to contribution.

### IV.

The New Jersey appellate courts have defined and explained contribution or indemnity and we find those decisions presumptive evidence of state law. In *Kolker Chemical Corp. v. Lumbermens Mutual Casualty Company*, 81 N.J.Super. 556, 196 A.2d 266 (1963) the court stated,

> The right to contribution depends upon the existence of a burden to be borne by two or more parties and upon an unequal distribution of that burden which, because of the inequality, should be corrected. The common burden may be created in various ways; for example, by a contract or group of contracts.... *Kolker*, 81 N.J.Super. at 559, 196 A.2d 266.

Similarly, in Couch on Insurance 2d., § 62:151 (1983) it is noted that:

> The right to contribution is predicated upon the principle that all insurers are equally liable for the discharge of a common obligation, and arises even though, for the obligation involved, the sureties are bound by separate instruments. The principle of contribution assumed the existence of two or more valid contracts of insurance covering the particular loss and the particular casualty in question.

■ In this case, there is no dispute that both Commercial Union and Bituminous Casualty had issued insurance policies covering the damage to the masonry wall being constructed by Pharaoh. That two insurers could be responsible for one loss is

in fact envisioned by the AIA agreement which waives certain rights for damage covered "by insurance obtained pursuant to this Paragraph 11.3 or *any other property insurance applicable to the [w]ork....*" (Emphasis added). This language does not preclude an independent cause of action, as asserted here, by one insurance company for contribution by a second insurer.

In its motion for summary judgment, Bituminous argued, in the alternative, that if this action is not barred by the terms of the AIA contract, "the court should find that the policies are concurrent and each insurer has an obligation to cover the loss on a pro rata basis."

Bituminous does not reassert this argument on appeal, but we review the record as it appeared before the district court. We have held that the AIA contract does not bar this action. Since Bituminous' alternate argument concedes that the loss should be apportioned, it is clearly not entitled to summary judgment on Commercial Union's contribution claim. The only remaining disputed question is what percentage of the loss each insurer must bear. Therefore we will reverse the order of the district court and remand for consideration of that question.

Bituminous argues that its policy is co-primary with that of Commercial Union so that the loss should be shared equally or prorated in proportion to the limits of each policy as compared with the combined policy limits. Commercial Union argued that it is entitled to contribution to the extent of Bituminous' policy limits because Bituminous' coverage is "primary" while Commercial Union's is "excess." We must first identify the governing New Jersey law.

Whether insurance is to be considered "primary" or "excess" is to be determined first by reference to the specific terms of the policy. *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.*, 28 N.J. 554, 147 A.2d 529 (1959). Both policies under consideration here contain "other insurance" clauses purporting to offer coverage only in excess of other available insurance.[2]

The Supreme Court of New Jersey held in *Cosmopolitan* that when excess insurance provisions are mutually repugnant, they are rendered inoperative and are to be disregarded in determining whether each policy provides primary or excess coverage. *Id.* at 562, 147 A.2d 529. The general coverage of each policy applies and the loss shall be apportioned in accordance with consistent express provisions of both policies or, if there are none, shall be shared equally. *Id.*, at 564, 147 A.2d 529.

Recently a New Jersey appellate court held that when concurrent insurers are signatories to the Guiding Principles for Overlapping Insurance Coverage, application of the standards contained in the Guiding Principles shall establish whether each policy is primary or excess. *Pasker v. Harleysville Mutual Insurance Co.*, 192 N.J. Super 133, 139, 469 A.2d 41, 44 (1983). The Guiding Principles are "a document adopted and used by the insurance industry to resolve disputes between insurance companies when the applicable policies have 'other insurance' clauses." *Pasker*, 192 N.J.Super at 139, 469 A.2d at 44. We believe that the Supreme Court of New Jersey would approve the use of these industry standards in apportioning losses. The parties agree, as do we, that the general rule in *Pasker* is applicable here.

**2.** The Commercial Union policy provides:
OTHER INSURANCE
This insurance shall apply as excess over any other available insurance.
Similarly, the Bituminous Inland Floater policy provides:
This insurance shall not apply to any loss except as excess insurance where any other valid and collectible insurance exists at the time of loss or damage whether prior or subsequent hereto as to casualty or any other kinds of insurance in the name of the Insured or others on any property hereby insured, then this insurance shall not apply or contrib-

ute to the payment of any loss until the amount due from all such other insurance shall have been exhausted; it being understood and agreed that under this policy the Insured is to be reimbursed to the extent of the difference between the amount due from such other insurance and the amount of actual loss sustained by the Insured after applying any and all contribution, co-insurance, average or distribution clauses contained in such other policies of insurance not exceeding, however, the applicable limit as specified in this policy.

We feel, however, that further discussion of the governing New Jersey law is in order because the arguments of both parties appear to assume that all excess clauses in policies insuring the same property against the same risk are mutually repugnant as a matter of law. To the contrary, although separate policies purport to be excess as to each other, it is only when the insured interests are the same in each that the "other insurance" provisions apply to determine which policy is primary and which is excess. *Id.* 28 N.J. at 559, 147 A.2d 529; *see also, Peerless Insurance Co. v. Bailey Mortgage Co.,* 345 F.2d 14 (5th Cir.1965); *St. Paul Fire and Marine Insurance Co. v. Protection Mutual Insurance Co.,* 607 F.Supp. 388 (S.D.N.Y.1985). Although the two policies at issue in *Cosmopolitan* were separately owned by an owner and a lessor of the same truck, the negligent driver who caused the loss being apportioned was an additional insured under the omnibus clause of each policy. 28 N.J. at 556–57, 147 A.2d 529.

A pro rata loss rule, such as that set forth in *Cosmopolitan,* applies only when the insured interests are the same and the excess clauses are actually repugnant, *i.e.,* when both policies "evidence the *same* intent with respect to insuring the risk and also with respect to avoiding liability in the event of adequate coverage by another carrier." *Id.* at 561, 147 A.2d 529; *London and Lancashire Ins. Co. v. Allstate Ins. Co.,* 178 A.2d 372, 72 N.J.Super. 369 (1962).

Our reading of the Guiding Principles as set forth in *Pasker* leads us to the conclusion that the court erred in its application of those standards, and that both parties' arguments with respect to apportionment may have been influenced by that error. Although it is not entirely clear, the approach of the court in *Pasker* appears to have been to assume that the repugnancy of excess clauses is to be determined first and that the Guiding Principles are then to be applied to determine which policy is primary and which is excess.

The Guiding Principles were adopted to provide a standard for determining to what extent "other insurance" clauses containing an "excess" provision shall be set aside and be inoperative. *Pasker* 192 N.J.Super. at 139, 469 A.2d at 44. This shall occur "to the extent that it is (they are) in conflict with the purpose of these Principles." Thus, the Principles are designed to aid in determining *whether* excess provisions are incompatible.

The Guiding Principles' standards for assessing mutual repugnancy, which were applied in *Pasker,* state expressly that they apply to "[i]nsurance covering same property *and* same interest" (emphasis added).[3]

The court in *Pasker* rejected without explanation the defendant insurer's argument that the interests at issue there—those of a vendor and vendee of real estate—were separate and that therefore the Principles were inapplicable. It is not entirely clear whether the *Pasker* court somehow found the insurable interests to be the same, or whether it erroneously read "same property and same interest" in the disjunctive and applied the Principles because the policies covered the same property. The Principles

---

**3.** The standards applied in *Pasker* are entitled "General Principles" and provide as follows:

GENERAL PRINCIPLES

1. Insurance covering same property and same interest:

A. Insurance covering a specifically described article or object, whether or not for an express amount, at a designated location shall be primary to any other insurance. (See Notes 1 and 2).

B. Insurance covering a specifically described article or object, whether or not for an express amount, without designation of location shall be excess as to "1–A" but primary as to any other insurance. (See Notes 1 and 2).

C. Insurance covering a specifically described group or class of related articles or objects, whether or not for an express amount, at a designated location shall be excess as to "1–A" and "1–B" but primary as to any other insurance. (See Notes 1 and 2).

D. Insurance covering a specifically described group or class of related articles or objects, whether or not for an express amount, without designation of location shall be excess as to "1–A" "1–B" and "1–C" but primary as to any other insurance. (See Notes 1 and 2).

state expressly that they are to govern where both the property *and* the insurable interest are the same.

It is not clear from the record before us whether the insurable interests in this case may be characterized as the same. The owner, Kode, contracted with the general contractor, Arnko, to insure all interests in the property including those of the various subcontractors. Nevertheless, Commercial Union's policy appears to indemnify only Kode. The subcontractor, Pharaoh, is not a named insured.

In accordance with the foregoing, we will reverse the summary judgment order of the district court and remand for further proceedings in accordance with this opinion. In light of our discussion of the applicable precedents, the parties may wish to supplement the record with evidence and/or argument as to whether the interest of the subcontractor is in fact covered under both policies, and as to a proper method of apportionment, if any, if it is not.