195 N.J. Super. 598 (1984)
481 A.2d 298
ALLSTATE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
ROYAL GLOBE INSURANCE CO., DEFENDANT-APPELLANT, AND KAREN MALMENDIER, LIBERTY MUTUAL INSURANCE COMPANY, JOSEPH GERBINO, PASSAIC-CLIFTON DRIV-UR-SELF SYSTEM, INC., PETER MARKER AND SPRUCE SCAFFOLD & LADDER CO., INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 1983.
Decided August 22, 1984.
*599 Before Judges BOTTER, PRESSLER and O'BRIEN.
*600 Stephen B. Fenster argued the cause for appellant (Fenster, Fenster and Farrell, attorneys; Stephen B. Fenster, on the brief).
Philip L. Geibel argued the cause for respondents, Passaic-Clifton Driv-Ur-Self System, Inc., Marker, and Spruce Scaffold & Ladder Co., Inc. (Geibel & Geibel, attorneys; Philip L. Geibel, on the brief).
William A. Carpenter, Jr. argued the cause for plaintiff (Carpenter, Bennett & Morrissey, attorneys; John E. Keale, of counsel; William A. Carpenter, on the brief).
John F. O'Donnell argued the cause for respondent Liberty Mutual Ins. Co. (Joan B. Sherman, attorney; John F. O'Donnell, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Defendant Royal Indemnity Company (Royal),[1] appeals from a judgment entered in this declaratory judgment action which provided that the Royal policy affords primary coverage for Joseph Gerbino up to $100,000 for injuries claimed by Karen Malmendier, a passenger in a car driven by Gerbino which was rented by Peter Marker and Spruce Scaffold & Ladder Co., Inc. (Spruce) from Passaic-Clifton Driv-Ur-Self (Passaic). The judgment also provided that the policies issued by Allstate Insurance Company (Allstate), covering a car owned by Gerbino, and by Liberty Mutual Insurance Co. (Liberty Mutual), covering a car owned by Marker, afforded excess coverage pro rata for any portion of the claim not satisfied by Royal. The judgment also provided that Royal must indemnify Gerbino for counsel *601 fees and costs in the sum of $4,303.99 incurred in his defense of the action brought by Malmendier. After the trial judge delivered his oral decision in the case, the Malmendier claim was settled for $50,000. That sum was paid by Royal. On this appeal Royal contends that its coverage was not primary, that its coverage was limited to $15,000 for one claimant and $30,000 in the aggregate, that Royal's obligation should be pro rated with the obligations of Allstate and Liberty, and that no counsel fee should have been awarded to Gerbino, but if one was payable it should have been shared by the other carriers. We reject these contentions and affirm.
On September 8, 1980, Joseph Gerbino, age 20, was driving a car which collided with a tree, injuring his passenger Malmendier. The car had been rented on September 5, 1980 by Passaic to Peter Marker, and nominally to Spruce. The vehicle was rented for Marker's personal use. Gerbino was Marker's stepson and a member of his household. Marker had given permission to Gerbino to use the car. Malmendier brought an action for her injuries against Gerbino, Marker, Spruce and Passaic. Allstate then brought this action to determine the obligations of the three insurance carriers involved. Allstate furnished the defense for Gerbino in the personal injury action and sought an adjudication that Royal was obligated to indemnify Gerbino for the cost of the defense which Royal refused to furnish.
The policy issued by Royal termed Passaic an insured and also provided:
Anyone else is an insured while using with your permission a covered auto you own, hire or borrow....[2]
Endorsement # 3 provided that a person or organization renting an automobile from Passaic is not an insured unless Passaic is obligated by written contract to provide liability insurance for such person or organization. In such event, the endorsement provided:

*602 ... the insurance afforded under this policy shall apply to such person or organization, provided such person's or organization's actual operation or (if he is not operating) his other actual use of the automobile at the time of the accident was within the scope of the permission granted by the named insured licensee, subject to the limits of liability stated in endorsement # 4 of the policy. It is further agreed that in the event that coverage is imposed, by operation of law, to the benefit of the customer, any person other than the customer or any authorized operator, the limits of such coverage shall be the minimum requirements of the financial responsibility law or other applicable statue [sic] of the state or other jurisdiction in which the accident occurred.
The endorsement also provided:
It is still further agreed that if the limits of liability stated, in the written contract, exceed the limits in item 2 of the declarations, the limits in the written contract shall apply, subject, however to a maximum of:

 Bodily Injury Liability Each Person $100,000.
 Each Accident $300,000.
 Property Damage Liability Each Accident $ 25,000.

Endorsement # 4 provided insurance limits applicable to Passaic as an insured of $100,000/$300,000 for bodily injury per person or accident, respectively, as well as property damage of $25,000 per accident. This endorsement also provided, to the extent relevant to this case:
The following limits of liability apply to insurance afforded 1) to any person or organization renting an automobile from the named insured licensee, or 2) any person or organization legally responsible for the use thereof:

 Private
 Passengers
 Bodily Injury liability
 each person $100,000
 each accident $300,000
 Property Damage liability
 each accident $ 25,000

Marker elected to purchase "Personal Accident Insurance" (PAI) as part of the rental agreement and he was charged a premium for each day's use of the car for such insurance. The back of the rental agreement contained provisions relating to *603 the insurance provided pursuant to the agreement. Those provisions stated in part:
9. LIABILITY COVERAGE
Lessor provides liability coverage for customer and any operator authorized by lessor in accordance with the standard provisions of a BASIC AUTOMOBILE LIABILITY INSURANCE POLICY, as required in the jurisdiction in which the vehicle was operated against liability for bodily injury including death (limits $100,000 each person, $300,000 each accident) and property damage (limits $25,000), arising from use of vehicle as permitted by this agreement. Coverage hereunder shall automatically conform to the basic requirements of any "no fault" law which may be applicable, but do not include "uninsured motorists" or supplementary "no fault" or other optional coverage.... Lessor warrants that to the extent permitted by law, the liability coverage described in this paragraph 9 is primary as respects any other insurance applicable to customer or any authorized operator. (Emphasis added.)[3]
The rental contract provided that the vehicle shall not be operated by any person except the customer and "authorized operators" with permission of the customer. "Authorized Operators" were defined to include "persons 21 or over who are members of Customer's immediate family and permanently reside in Customer's household," as well as "a regular employee of Customer."
Appellant contends that the insurance provided by the contract did not cover Gerbino because Gerbino was under 21 years of age and was therefore not a person authorized by Passaic to operate the car. If Gerbino is deemed covered by operation of law, such as N.J.S.A. 45:21-1 et seq., Royal contends that the coverage should be limited to appropriate statutory limits. N.J.S.A. 45:21-3 requires certain insurance coverage for vehicles owned by persons in the business of renting or leasing motor vehicles, with limits of $10,000/$20,000 and $5,000. The limits contained in N.J.S.A. 39:6A-3 of the more recently enacted no-fault law are $15,000/$30,000 and $5,000. Royal contends that the $15,000/$30,000 limits apply.
*604 The no-fault law, N.J.S.A. 39:6A-1 et seq., requires every owner or registered owner of an automobile registered or principally garaged in New Jersey to carry automobile liability insurance coverage. N.J.S.A. 39:6A-3. The coverage is for the benefit of any person who suffers bodily injury, death or property damage arising out of the operation or use of the automobile. In the case at hand Passaic and Royal agreed to furnish such coverage with liability limits of $100,000/$300,000, but attempted to reduce or withdraw such coverage in the event the rented automobile was driven by an unauthorized person.
Even if the limiting language could accomplish Royal's purpose, the endorsements are written in such a fashion as to convey the impression that the policy limits are $100,000/$300,000. Moreover, the insurance policy and the rental agreement, at least as to the provisions for liability coverage, are contracts of adhesion and will not be enforced to the extent that they conflict with the public policy of this state. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965); see Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 98-103 (1980). Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496-497 (1960), held that "if a person is given permission to use a motor vehicle in the first instance, any subsequent use short of theft or the like while it remains in his possession, though not within the contemplation of the parties, is a permissive use within the terms of a standard omnibus clause in an automobile liability insurance policy." Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966), held that an insurance policy "which purports to have a more restrictive omnibus coverage is automatically amended to conform to the statutory standard." Our Supreme Court has made it clear that restrictions on the initial permission rule in an attempt to limit automobile coverage run contrary to the public policy expressed in our compulsory insurance laws. See Motor Club Fire & Casualty Co. v. New Jersey Mfr. Ins. Co., 73 N.J. 425 (1977), cert. den. 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977). Thus, we conclude that the *605 provisions which attempt to restrict Royal's insurance coverage to the lessee and authorized operators, such as persons 21 years of age or more who are members of the lessee's immediate family and reside in his household, are unduly restrictive and are unenforceable. See Williams v. American Home Assurance Co., 121 N.J. Super. 351 (App.Div. 1972), certif. den. 62 N.J. 260 (1973), which held that coverage under a policy which included the renter of an automobile as an insured applied as well to an unlicensed driver, Ms. Williams, who had permission of the renter to use the car, although the car rental agreement prohibited, in effect, the operation of the vehicle by someone other than the renter. In reaching this conclusion the court relied on the omnibus clause in the policy and the rule laid down in Matits, supra, and similar cases. The court said:
The reasoning in these cases applies equally as well to the situation before us. In harmony with the financial responsibility laws cited above, the Legislature has indicated its desire to assure compensation to the innocent victims of negligently driven automobiles for rent as well as those in private use. N.J.S.A. 45:21-1 et seq. In light of this policy there appears to be no reason to distinguish the lessor of a rented automobile from one who loans his private car in determining liability for injuries resulting from operation of his automobile beyond the scope of his initial permission. Certainly this result must obtain where the filed policy contains a standard omnibus provision of the kind giving rise to this expression of public policy. [121 N.J. Super. at 360-361]
Accord Allstate Ins. Co. v. Sullivan, 643 S.W.2d 21 (Mo. App. 1982), where the court held that Allstate Insurance Company could not deny coverage to defendant who drove the covered rented automobile while intoxicated, contrary to provisions of the rental agreement. The court reasoned that the policy was a required policy under Missouri's Motor Vehicle Safety Responsibility Law. As such, omnibus coverage was required for all persons using the vehicle with the express or implied consent of the named insured. The court said that a "policy providing less protection is contrary to the public policy of this state," and that, "[i]n determining the extent of coverage here we must be aware of the serious consequences of allowing restrictions in the rental agreement to determine the coverage to be provided." At 23. Reliance was placed on Weathers v. Royal Indem. *606 Co., 577 S.W.2d 623 (Sup.Ct.Mo. 1979), which held that coverage applied despite the fact that the rented automobile was operated by a person not 21 years of age and not a member of the renter's family or otherwise termed an authorized operator under the rental agreement. There the renter was a passenger in the car; and the court found that the car was being used for the intended purpose, though it was operated contrary to the agreement. See also Peters v. State Farm Mut. Ins. Co., 58 Misc.2d 738, 296 N.Y.S.2d 527 (Sup.Ct. 1968) (coverage applied to driver under age 25 who operated the vehicle contrary to the car rental agreement). Both the no-fault law, N.J.S.A. 39:6A-1 et seq., and the law requiring insurance coverage for rented vehicles, N.J.S.A. 45:21-1 et seq., are designed to afford coverage for the benefit of injured persons as well as those who operate motor vehicles. See N.J.S.A. 39:6A-3; N.J.S.A. 45:21-3 (coverage "shall be for the benefit of any person suffering loss, damage or injury," notwithstanding any violation of a policy provision).
We also reject Royal's contention that the $100,000/$300,000 limits do not apply and that the minimum limits fixed by statute should apply. We previously noted that the policy had the appearance of providing $100,000/$300,000 limits. Since the restrictions on the persons who may use the leased vehicle with permission of the lessee will not be enforced with respect to insurance coverage, we are disinclined to enforce a provision that attempts to reduce the coverage because of the age of the driver. See Keystone Ins. Co. v. Atlantic Chrysler Plymouth, Inc., 167 N.J. Super. 353 (Law Div. 1979). General Accident Group of Ins. Co. v. Liberty Mut. Ins. Co., 191 N.J. Super. 530, 534 (App.Div. 1983), did not disapprove of the holding in Keystone; it upheld a difference in coverage for leased vehicles for an owner who is in the auto-renting business as compared with lessees. The holding does not authorize a difference in coverage between lessees and persons using the vehicle with their permission. It has been generally held that the coverage for a permissive user must be the same as the *607 coverage afforded the owner. See cases cited in Keystone, namely, Metz v. Universal Underwriters Ins. Co., 10 Cal.3d 45, 109 Cal. Rptr. 698, 513 P.2d 922 (1973); Smith v. National Indem. Co., 57 Wis.2d 706, 205 N.W.2d 365 (1973). Cf. Allstate Ins. Co. v. Sullivan, supra, 643 S.W.2d at 23, n. 4, where the court rejected a similar contention that if coverage applies it should be limited to the amount required under Missouri's Safety Responsibility Law.
We also conclude that Royal provided primary coverage and the Allstate and Liberty Mutual policies afforded excess coverage only. The other insurance clause in Royal's policy provided, in part, that as to any auto owned by Passaic, "this policy provides primary insurance." It also provided that, "When two or more policies cover on the same basis, either excess or primary," Royal would pay only its pro rata share. The Allstate and Liberty Mutual policies provided that, with respect to a non-owned automobile, its coverage would be excess insurance over other valid insurance. Since Gerbino was using the automobile with permission of the lessee, and, in the eyes of the law, with permission of Passaic, the coverage on the vehicle afforded by Royal was primary. See Motor Club Fire & Casualty Co. v. New Jersey Mfr. Ins. Co., supra, 73 N.J. at 439. Because of the difference in policy terms, Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., 28 N.J. 554 (1959), does not apply to this case. We note also, as stated above, that Passaic warranted in its rental agreement that the insurance liability coverage provided for the lessee was primary in relation to other insurance applicable to the lessee or any authorized operator. We need not consider whether Passaic's warranty was binding on Royal, since we are satisfied that Royal's coverage was primary in any event. Therefore, Royal had the primary responsibility for furnishing Gerbino's defense, and the award of counsel fees was appropriate.
Affirmed.
NOTES
[1] Royal Indemnity Company is one of a number of affiliated insurance companies referred to as the Royal-Globe Insurance Companies. The policy in question was issued by Royal Indemnity Co. The pleadings may not have been formally amended to show the correct name of this defendant, but the correction was noted for the record at oral argument after the trial judge delivered his oral opinion.
[2] There are exceptions to this definition which do not apply to this case.
[3] Paragraph 9 also contained the same language concerning coverage limits which is in endorsement # 3, quoted above, in the event "coverage is imposed by operation of law to the benefit of any person other than the customer or any authorized operator."