704 A.2d 572

DARREN AMBROSIO, PLAINTIFF, v. AFFORDABLE AUTO RENT-AL, INC., DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND LEONARD WEINBERGER, DEFENDANT/THIRD-PARTY PLAINTIFF–RESPONDENT, v. ALLSTATE INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT/CROSS–APPELLANT.

———————

VINCENT OTTOMANO, PLAINTIFF, v. DARREN AMBROSIO AND LEONARD WEINBERGER, DEFENDANTS, AND JOEL A. NIERENBERG, DEFENDANT–RESPONDENT, AND AFFORDABLE AUTO RENTAL, INC., DEFENDANT–RESPONDENT/CROSS–APPELLANT, AND FORTUNE GARDEN, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1997—Decided January 5, 1998.

Before Judges HAVEY, LANDAU and NEWMAN.

*Thomas Decker*, argued the cause for appellant Fortune Garden, Inc. (*Schechner & Decker*, attorneys; *Virginia T. Shea*, on the brief).

*Leonard Rosenstein*, argued the cause for respondent/cross-appellant Affordable Auto Rental, Inc. (*Hurley & Vasios*, attorneys; *Mr. Rosenstein*, on the brief).

*John F. O'Donnell*, argued the cause for respondent/cross-appellant Allstate Insurance Co. (*O'Toole & Couch*, attorneys; *Michael Dellarovere*, on the brief).

*Donald L. Crowley*, argued the cause for respondent Joel A. Nierenberg (*Methfessel & Werbel*, attorneys; *Mr. Crowley* and *Lori Brown Sternback*, on the brief).

*Harold M. Hoffman*, argued the cause for respondent Leonard Weinberger (*Mr. Hoffman*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

This appeal involves the question of the respective obligations of various insurance companies under their automobile liability policies. Because we have determined that the various policies are all co-primary and shall share equally in the settlement up to the maximum of the lowest amount of coverage provided by any one insurer, we reverse.

The facts are not in dispute. Leonard Weinberger was part-owner of Fortune Garden, Inc., a restaurant in Teaneck. On September 12, 1993, Fortune Garden employed Joel A. Nierenberg on a trial basis. While making a food delivery, Nierenberg was involved in a car accident with Darren Ambrosio and Vincent Ottomano. At the time of the accident, Nierenberg was driving a vehicle owned by Affordable Auto Rental, Inc. (Affordable Auto) and leased to Weinberger.

Weinberger rented the vehicle driven by Nierenberg on September 5, 1993 because his own vehicle was "mechanically unreliable." Weinberger said that he "was having difficulty starting the car in the morning on numerous occasions, ... and it had been in and out of the shop to have that problem solved."

Ambrosio and Ottoman instituted an action for the injuries they sustained. They sued Nierenberg, Affordable Auto, Weinberger and Fortune Garden. Weinberger filed a third-party complaint naming Allstate Insurance Company (Allstate), the provider of Weinberger's personal automobile insurance policy, as a third-party defendant.

The trial judge directed the parties to submit briefs regarding coverage issues in order for him to determine the priority of insurance coverage available to plaintiffs. In a written opinion of January 10, 1997, the trial judge determined that the policy issued by Unity Fire and General Insurance Company (Unity) to Affordable Auto was primary. Secondary coverage was found to be shared by both Progressive Casualty Insurance Company (Progressive), the insurer of Fortune Garden and First Trenton Indemnity Company (First Trenton), the automobile insurer of Nierenberg's father. If the above policy limits were exhausted, further coverage would be provided by the Allstate policy issued to Weinberger.

The parties then agreed to settle the case with the understanding that the apportionment between the insurance carriers could be altered after review by this court.

Fortune Garden appealed and Affordable Auto and Allstate filed cross-appeals. We address each of the arguments directed at the various policies in the following order: First Trenton, Allstate, Unity and Progressive.

I

Fortune Garden contends that the First Trenton policy that was issued to Samuel Nierenberg, Nierenberg's father, should be

deemed primary and all other applicable policies should be deemed co-secondary.

The liability insurance section of the First Trenton policy states:

We will pay damages for which the insured becomes legally responsible because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of your car or any non-owned car.

  *  *  *  *  *  *  *  *

Our obligation to pay or defend ends when the applicable limit of liability is used up by the payment of judgments or settlements. The limits of liability are shown on the declarations page of this policy.

For a "non-owned" car, an insured is defined, in part, as "you and any relative ... while using that car if the use is (or is reasonably believed to be) with the owner's permission." The trial judge found that Nierenberg, the son of the insured listed on the declaration page of First Trenton's policy, was a permissive user of the vehicle leased by Weinberger. This finding is not manifestly unsupported by the competent, relevant and reasonably credible evidence. *See Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 483–84, 323 *A.2d* 495 (1974). Thus, Nierenberg falls under the definition of an "insured" under the policy.

Referring to two "other insurance" clauses in First Trenton's policy, Fortune Garden argues that First Trenton's policy is primary as to any other available insurance. The first "other insurance" clause quoted by Fortune Garden is found in the uninsured/underinsured motorists insurance section of the policy and is inapplicable. Fortune Garden's reliance on the "other insurance" clause of the liability section of the policy, however, is appropriate.

Under this section:

If the insured is covered by the other liability insurance, we will pay only the share of the damages that this policy's applicable limit of liability bears to the total of the limits of all collectible insurance. However, for a substitute car or non-owned car, we will pay, up to the limit of our liability, only that part of the damages not covered by the other insurance.

Fortune Garden argues that since this provision does not mention excess liability, the First Trenton policy should be deemed to afford primary coverage. We disagree.

Generally, an insurance policy is interpreted according to its plain and ordinary meaning. *Maimone v. Liberty Mutual Ins. Co.,* 302 *N.J.Super.* 299, 306, 695 *A.*2d 341 (App.Div.1997) (citing *Voorhees v. Preferred Mutual Ins. Co.,* 128 *N.J.* 165, 175, 607 *A.*2d 1255 (1992)). The first sentence of the "other insurance" provision quoted above provides that if the insured is covered by other insurance, First Trenton will only provide its share of the damages of all collectible insurance. Thus, based on its plain and ordinary meaning, the First Trenton policy would be co-primary with other insurance policies that cover the insured. However, when a substitute car or non-owned car is involved, First Trenton will only pay "that part of the damages not covered by other insurance."

A "non-owned car" is defined in the policy as "a land motor vehicle with at least four wheels designed to be used mainly on public roads" that is not "owned by or furnished or available for the regular use of you or a relative." In the instant matter, Nierenberg was driving a vehicle owned by Affordable Auto and rented by Weinberger. In accordance with the policy definition of a "non-owned car," the second sentence of the "other insurance" provision, compelling First Trenton to pay "only that part of the damages not covered by the other insurance," is applicable.

To interpret First Trenton's policy as the sole primary policy is at odds with its plain meaning. The policy clearly states that for non-owned vehicles, First Trenton is only liable for damages *not covered by other insurance* policies. The car which Nierenberg owned was directly insured by Unity, and the Allstate and Progressive policies could also apply. Furthermore, there would be no reason for First Trenton to differentiate between substitute or non-owned vehicles in the second sentence of its "other insurance" clause and owned vehicles in the first sentence unless different coverage provisions were intended. Thus, while the word "excess"

is not included in the coverage provision, the language employed clearly provides for excess coverage.

## II

The trial judge determined that the Allstate policy, the personal automobile policy issued to Weinberger, "attaches only after all coverage available to [Nierenberg] is exhausted." The court stated that, because Weinberger was not a tortfeasor, the Allstate policy "comes into play only by virtue of the fact that the Affordable Rental vehicle is a temporary substitute vehicle." Allstate contends that the trial judge's decision was in error because the vehicle being operated by Nierenberg was not a temporary substitute vehicle which would receive coverage under the Allstate insurance policy.

Regarding liability coverage, the Allstate policy provides that Allstate "will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident." "Insured" includes "any person using your covered auto." "Your covered auto" is defined as any auto that "you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its: a. breakdown; b. repair; c. servicing; d. loss; or e. destruction."

Allstate contends that Weinberger did not establish that the vehicle that he rented was a "temporary substitute" vehicle. Moreover, Allstate argues that the trial judge improperly decided the issue summarily, despite outstanding issues of material fact.

Allstate's arguments are based on Weinberger's failure to distinguish whether his own vehicle was broken down, being repaired or serviced, or otherwise not available for use because of loss or destruction. Weinberger did state, however, that he rented the vehicle because his own vehicle was "mechanically unreliable." He also stated that he "was having difficulty starting the car in the morning on numerous occasions, ... and it had been in and out of the shop to have that problem solved." Although Wein-

berger could not recall if his automobile was in for service or working on the day that he rented the vehicle in question, the trial judge found that the rented vehicle was a "temporary substitute" under the terms of the Allstate policy.

■ A non-owned vehicle is considered a temporary substitute if any other covered auto "is out of normal use because of its breakdown, repair, servicing, loss, or destruction." Breakdown is defined as "a failure to function ... failure to progress or have effect." *Merriam Webster's Collegiate Dictionary* 140 (10th ed.1993). Weinberger rented the vehicle in question because his 1987 Grand Marquis had become mechanically unreliable. He had no confidence that his car would start because of past difficulties on numerous occasions. Under the policy, a covered auto only needs to be out of normal use. Allstate's reliance on the fact that Weinberger did not know whether or not his own car was in for servicing or being repaired on the day that he rented the vehicle is, therefore, misplaced. The policy did not require that the renter's own car be in service or under repair. The policy only required that the auto be out of normal use because of breakdown, and Weinberger's auto satisfied that definition. No genuine issue of material fact precluded the trial judge from granting summary judgment on this point. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Allstate's automobile policy issued to Weinberger therefore affords coverage to the rented vehicle driven by Nierenberg.

The "other insurance" provision under Allstate's policy provides:

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Under this clause, because the vehicle driven by Nierenberg is "non-owned," any insurance provided by Allstate is "excess over any other collectible insurance."

## III

The next issue is whether the trial judge improperly concluded that the policy issued by Unity to Affordable Auto provides primary coverage. In determining coverage priority, the trial judge said, "[w]e must first look to the coverage on the vehicle involved in the accident and being operated by Nierenberg." In effect, the trial judge held that the vehicle closest to the accident should be saddled with the primary coverage. We disagree.

*N.J.S.A.* 45:21–1 to –15 pertains to motor vehicles which are rented or leased for operation by lessees or bailees. *N.J.S.A.* 45:21–2 provides that every owner must file with the clerk of the municipality in which he resides or has his place of business a policy of insurance "insuring such owner against loss from the liability imposed by law upon such owner" for damages due to bodily injury or death suffered by any person other than the owner's employee, or a person in the vehicle as a driver or occupant, arising out of the negligent maintenance, use or operation of the motor vehicle. *N.J.S.A.* 45:21–1 defines "owner" as "any and every person engaged in the business of renting or leasing motor vehicles, without a driver, to be operated by the lessee or bailee, his agent or servant, for purposes other than the transportation of passengers for hire." The minimum policy limits established by *N.J.S.A.* 45:21–3 for such insurance are $10,000/$20,000 for bodily injury or death.

The liability section of the Unity policy states the following:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

Under this section, an "insured" includes "[a]nyone ... while using with your permission a covered 'auto' you own, hire or borrow," except certain individuals, including:

the "rentee" or any driver who obtains the "auto" from a "rentee." However, if a "rentee" or such other driver:

(a) has no other available insurance (whether primary, excess, or contingent), he or she is an "insured" but only up to the compulsory or financial responsibility law limits.

(b) has other available insurance (whether primary, excess or contingent), less than the compulsory or financial responsibility law limits, he or she is an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her own insurance.

Nierenberg and Fortune Garden have properly observed that the foregoing provision constitutes an illegal escape clause. In *Selective Ins. Co. v. Charter Risk Retention Group Ins. Co.*, 261 *N.J.Super.* 1, 617 *A.*2d 664 (App.Div.1992), we addressed whether an insurer providing a liability insurance policy on behalf of an "owner" engaged in the business of renting or leasing motor vehicles may restrict the coverage afforded under the policy to the "owner interest" excluding "[c]overage for rentee of insured units." *Id.* at 2, 617 *A.*2d 664. We held that this restrictive provision constituted an illegal escape clause, stating "policies of insurance filed in compliance with *N.J.S.A.* 45:21–2 and –3[are] required to provide the coverage to lessees without exception." *Id.* at 4, 617 *A.*2d 664.

The Unity policy provision that only provides coverage to "rentees" without "other available insurance" or to "rentees" in excess of "other available insurance" that does not cover the statutory minimums is similarly an illegal escape clause. "To the extent that an exclusionary clause conflicts with the statutorily required omnibus clause, the language of the exclusionary clause is deemed inapplicable." *Selected Risks Ins. Co. v. Nationwide Mutual Ins. Co.*, 133 *N.J.Super.* 205, 211, 336 *A.*2d 24 (App.Div. 1975). Thus, without this restrictive provision and under the statutory requirements of *N.J.S.A.* 45:21–2 and –3, Weinberger and Nierenberg are included insureds under the Unity policy.

The "other insurance" provision of the policy would also be applicable. That provision states that "for any covered 'auto' the insurance provided by this policy is excess over any other collectible insurance available to you or any 'insured', whether such insurance is primary, excess or contingent." By its terms, given

the existence of other insurance, it was incorrect to make Unity the exclusive primary policy.

## IV

■ Fortune Garden maintained automobile insurance with Progressive. The liability section of that policy provides the following:

> We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

An insured includes "anyone ... while using with your permission a covered auto you own, hire or borrow." The trial judge correctly deemed Nierenberg to be a permissive user of the Affordable Auto vehicle. Nierenberg is therefore an "insured" under the Progressive policy.

The "other insurance" provision states the following:

> For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance.

*     *     *     *     *     *     *     *

> When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total limits of all the polices covering on the same basis.

Under this provision, since Nierenberg was driving a non-owned vehicle, the insurance provided by the policy "is excess over other collectible insurance" on a pro rata basis.

■ As discussed, all four policies provide excess coverage over all other collectible insurance. However, as explained in *Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co.,* 28 *N.J.* 554, 562, 147 *A.*2d 529 (1959), there can be no "excess" insurance in the absence of "primary" insurance. When the "other insurance" clauses come into conflict, the "other insurance" provisions are deemed "mutually repugnant" and "each company is obligated to share in the cost of the settlement and expenses." *Ibid.* Thus, under *Cosmopolitan,* First Trenton, Allstate, Unity

and Progressive are all obligated to share in the cost of the settlement.

■ The only remaining question is what portion of the total settlement each insurer must bear. Nierenberg suggests that all four providers must share in the cost of the settlement on a pro rata basis with each policy's limit of liability set against the total of the limits of all collectible insurance. This contention, however, is not supported by the *Cosmopolitan* decision.

In *Cosmopolitan*, Continental insurance argued that "[t]he parties should pro-rate their liability on the basis of the limits of liability of each policy." *Id.* at 564, 147 *A.*2d 529. The Court rejected this pro rata sharing and held that the loss should be equally apportioned between the two carriers, stating that "the cost of increased limits is relatively small when compared to the cost of minimum coverage." *Ibid.* The Court noted that neither policy expressly provided for such pro rata sharing where a hired or non-owned vehicle is involved. *Ibid.* Here, Progressive is the only insurer that provides for a pro rata share of liability in its excess clause for non-owned vehicles. Based on the fact that the three other providers do not provide for pro rata sharing for non-owned vehicles, requiring equal apportionment of liability among the insurers is appropriate. *But see American Home Assurance Co. v. Hartford Ins. Co.*, 190 *N.J.Super.* 477, 489, 464 *A.*2d 1128 (App.Div.1983) (finding pro rata sharing where the "other insurance" provisions of policies each provided for the proration of any loss).

In the present matter, because two parties have settled, the per accident limits of coverage apply. Those limits for each policy are as follows: $30,000 (Unity); $300,000 (First Trenton); $500,000 (Progressive); and $500,000 (Allstate). Together, the settlement claims of Ambrosio and Ottoman total $145,000. Based on an equal apportionment analysis, the settlement award should be shared equally among the four providers, up to the lowest per accident coverage limit of the policies. *See American Nurses Ass'n v. Passaic Gen. Hosp.*, 98 *N.J.* 83, 91, 484 *A.*2d 670 (1984)

(finding excess should be shared equally up to the limits of National's policy, the insurer providing the least amount of coverage). Therefore, since the lowest amount of coverage per accident provided in this case is $30,000, each insurer is responsible for $30,000 of the settlement, for a total of $120,000. The remaining portion of the settlement, $25,000, should then be equally apportioned among the remaining providers up to the lowest policy limits. Under this approach, First Trenton, Allstate and Progressive are all responsible for an additional $8,333.

Reversed.