848 A.2d 888

PATRICIA ROBINSON AND DAVID ROBINSON, PLAINTIFFS, v. DOMINICK N. COIA, JR., AND RICHARD BROWN, JR., DEFENDANTS, AND AVIS RENTAL CAR, DEFENDANT–APPELLANT, v. RICHARD BROWN, JR., DEFENDANT/THIRD PARTY PLAINTIFF–RESPONDENT, v. JAMES J. O'CONNELL AND GLORIA A. MAISEY, THIRD PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 7, 2004—Decided May 27, 2004.

Before Judges CARCHMAN, WECKER and WEISSBARD [1].

*David I. Blee* argued the cause for appellant Avis Rental Car (*Faust, Goetz, Schenker & Blee,* attorneys; *Narda M. Zuniga* on the brief).

*Allan Maitlin* argued the cause for respondent *Richard Brown, Jr.* (*Sachs, Maitlin, Fleming, Greene, Marotte and Mullen,* attorneys; *Mr. Maitlin* of counsel and on the brief, *Danielle M. DeGeorgio* on the brief).

The opinion of the court was delivered by

WEISSBARD, J.A.D.

Defendant, Avis Rent A Car Systems, Inc. (Avis) appeals from a judgment requiring it to provide primary insurance coverage to defendant, Richard Brown, Jr., and, as a result, to reimburse Brown's personal auto insurance carrier, Farmers Insurance Company (Farmers) for legal fees and settlement monies that it paid on Brown's behalf. We conclude that as a self-insurer, Avis is required to provide primary coverage despite a provision in its

---

[1] Although Judge Weissbard was not present at oral argument, he reviewed the tape of the argument.

rental contract with Brown that made its coverage secondary to that of Farmers.

This appeal arises out of a multiple vehicle accident on April 12, 1999. A car being operated by Dominick N. Coia, Jr., and owned by James O'Connell, was traveling west on the Atlantic City Expressway when Coia, having missed his intended exit, attempted to execute a u-turn from the left lane through a cut-thru on the Expressway. As Coia slowed to make his illegal turn, his vehicle was struck from behind by a car owned by Avis and operated by Brown. Patricia Robinson was a passenger in Brown's car. Two other cars following behind Brown then became involved in the collision. The details of their ownership and operation are not pertinent to the issues that confront us.

Robinson thereafter initiated suit against Coia, Brown and Avis. The law firm of Sachs, Maitlin, Fleming, Green, Wilson and Marotte (Sachs) filed an answer on behalf of Brown on assignment from Farmers, Brown's personal automobile insurance carrier. A separate law firm filed an answer on behalf of Avis. Thereafter, Brown filed a cross-claim against Avis seeking a declaration that Avis, as a self-insured, was required to provide primary coverage to Brown, to assume his defense and reimburse him for counsel fees already incurred. Avis and Brown filed summary judgment motions on the cross-claim, with Avis contending that its insurance was only secondary to that of Farmers and that, accordingly, no defense of Brown was required.

The Avis car had been rented by Brown's wife at an Avis facility in New Jersey. However, the car was registered in Pennsylvania where Avis is self-insured.[2] Brown declined Avis' offer of optional insurance. The rental agreement between Avis and Brown contained the following provision:

[A]nyone driving the car as permitted by this agreement will be protected against liability for causing bodily injury or death to others or damaging the property of

---

2 Avis cars registered in New Jersey are covered by an insurance policy with CNA providing liability limits of $15,000/$30,000.

someone other than the driver and/or the renter up to the minimum financial responsibility limits required by applicable law.

. . . .

The coverage provided by you [Avis] shall be excess over any applicable insurance available to me [renter] or any other driver, from any other source, whether primary, excess, secondary or contingent in anyway.

As noted, Brown had a personal automobile policy with Farmers that contained liability coverage limits of $100,000 per occurrence and $300,000 per accident. That policy had an excess insurance clause governing Brown's use of a rental car, that provided that "any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

In ruling upon the cross motions for summary judgment, Judge Donaldson determined that Avis' self-insurance certificate was the equivalent of an insurance policy, with the result that Avis became the primary insurer, with Farmers providing excess coverage only. Central to that ruling was the judge's conclusion that the rental agreement between Brown and Avis was not part of Avis' self-insurance and the terms of that agreement did not apply to render the Avis coverage excess. Subsequently, the judge ruled that the extent of Avis' liability under its certificate was $15,000/$30,000, the minimum required under New Jersey law, rejecting Brown's argument that the coverage was limited only by the extent of Avis' assets. Avis was also required to assume the defense of Brown in the pending action.

Upon the substitution of new counsel for Brown, the Sachs law firm filed an application for reimbursement from Avis of its attorneys' fees and costs in both the cross-claim coverage action and in defense of the underlying personal injury suit. The judge awarded the firm $9585 as reimbursement for defense of the Robinson case and $16,300 for its work on the coverage aspect of the litigation, together with $496.96 in costs.

■ Subsequently, the underlying personal injury case was

concluded, and this appeal by Avis followed.[3]  Avis contends here, as it did below, that its coverage is only excess to that of Brown's personal insurer, Farmers, and that it should be reimbursed for all fees and costs paid to Sachs as well as being reimbursed for the work of its attorneys and for settlement money paid on Brown's behalf.  Avis argues that by virtue of the quoted provision in its rental agreement with Brown, the coverage provided by its self-insurance certificate was only secondary to that of Brown's personal auto insurance carrier.  We disagree.

Pursuant to *N.J.S.A.* 45:21–2, Avis, being in the business of leasing motor vehicles, is required to carry liability insurance insuring it against damages suffered by a third party resulting from the negligent operation of its leased vehicle.  The limits of liability must be in the minimum amount of $15,000/$30,000/$5000.  *Hanco v. Sisoukraj*, 364 *N.J.Super.* 41, 45 n. 1, 834 *A.*2d 443 (App.Div.2003).  The statute further provides that the lessor may be self-insured, as Avis is here.  *N.J.S.A.* 45:21–8.  However, as Avis correctly observes, the statute does not explicitly state that the required coverage must always be primary (as opposed to co-primary or excess) but only that there be such coverage.  *See Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.*, 28 *N.J.* 554, 563, 147 *A.*2d 529 (1959).

Resolution of this appeal requires us to balance two ostensibly competing lines of authority.  On the one hand, Avis stresses the settled principle that agreements not contrary to law, and without ambiguity, should be enforced as written, and not be re-written by the courts.  *See Christafano v. New Jersey Mfr. Ins.*, 361 *N.J.Super.* 228, 234–35, 824 *A.*2d 1126 (App.Div.2003); *Universal Underwriters v. CNA Ins. Co.*, 308 *N.J.Super.* 415, 420, 706 *A.*2d 217 (App.Div.1998).  In that regard, Avis is correct in noting that the language contained in its rental agreement with Brown is "plain and unambiguous."  Nevertheless, this general

---

[3] We reject as without merit, Brown's contention that Avis' appeal must be dismissed because it was filed out of time.  *R.* 2:11–3(e)(1)(E).

rule has an important caveat; that insurance policies, as well as rental agreements, are contracts of adhesion and subject to special rules of interpretation. *Christafano, supra,* 361 *N.J.Super.* at 235, 824 *A.*2d 1126. Such contracts "will not be enforced to the extent that they conflict with the public policy of this state." *Allstate Ins. Co. v. Royal Globe Ins. Co.,* 195 *N.J.Super.* 598, 604, 481 *A.*2d 298 (App.Div.1984) (citations omitted). Since it complied with the statute, Avis argues that it violated no public policy. Brown contends that Avis' attempt to avoid providing primary insurance coverage to him by means of the provision in the lease agreement constitutes just such a violation of public policy.

We conclude that Judge Donaldson correctly resolved the competing arguments against Avis. In our view, Avis' effort to avoid providing insurance coverage through the terms of its rental agreement does violate public policy. First, Avis gains a substantial monetary benefit by being self-insured and cannot rightly be permitted to "have its cake and eat it too." Under its rental contract, Avis escapes any responsibility for providing insurance coverage if the renter has other liability insurance available to them. Thus, in what must be a significant percentage—if not the vast majority—of instances Avis is relieved of providing any coverage at all.[4] Avis thereby shifts the burden of providing the mandatory insurance coverage to the lessee's insurer. *White v. Howard,* 240 *N.J.Super.* 427, 430 n. 1, 573 *A.*2d 513 (App.Div.), *certif. denied,* 122 *N.J.* 339, 585 *A.*2d 354 (1990). In *White,* Judge Dreier said:

> While Agency [the rental company] may choose to save insurance premiums by self-insuring its vehicles, it should not be permitted to do so partially at the expense of other insurers who normally would look to each other under the "other insurance" provisions of their policies, and who have set their rates accordingly. Since only financially responsible owners of 25 or more vehicles may become certified self insureds ... those best able to pay would be permitted by this device

---

[4] Indeed, in this case the underlying suit was settled for $2000, well below the minimum coverage, and thereby not implicating any excess coverage. As a result, if Avis' position were accepted, it would have paid nothing.

to shift the costs of accidents to the non-fleet owners of other vehicles and their insurers.

[*Id.* at 433, 573 A.2d 513].

■ We agree with Avis that *White* is factually distinguishable because the self-insurer in that case, Agency, sought to avoid *any* liability coverage through the terms of its rental contract while here, Avis does provide primary coverage if the lessee has no coverage or excess if the lessee does have a policy. Nevertheless, we find Judge Dreier's comments to be just as applicable in the present context. Avis is in fact seeking to shift the costs of accidents to other car owners and their insurers while itself avoiding the necessity of obtaining insurance coverage. To sanction this course of conduct would exempt Avis from the rules that apply to other automobile owners regarding liability insurance. Those "who choose to self-insure are held to the same duties as those who do not." *Auto Owners Ins. Co. v. Enterprise Rent–A–Car Co.—Midwest,* 663 *N.W.*2d 208, 211 (S.Dak.2003).

Second, we previously faced the same issue, in a slightly different context, in *Ambrosio v. Affordable Auto Rental, Incorporated,* 307 *N.J.Super.* 114, 121–22, 704 *A.*2d 572 (App.Div.1998). In that case, Unity, an insurance carrier, issued a policy to Affordable Auto, a car rental company. *Id.* at 118, 704 *A.*2d 572. The policy excluded from the definition of insured the "rentee" or any driver obtaining the car from the "rentee" unless such "rentee":

(a) has no other available insurance (whether primary, excess, or contingent), he or she is an "insured" but only up to the compulsory or financial responsibility law limits.

(b) has other available insurance (whether primary, excess, or contingent), less than the compulsory or financial responsibility law limits, he or she is an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her own insurance.

>[*Id.* at 123–24, 704 *A.*2d 572].

We held that the Unity policy provision constituted an "illegal escape clause," since it conflicted with the statutorily required omnibus clause, *N.J.S.A.* 45:21–3, and was therefore ineffective. *Id.* at 124, 704 *A.*2d 572. In reaching that conclusion, we relied on *Selective Insurance Company v. Charter Risk Retention Group*

*Insurance Company,* 261 *N.J.Super.* 1, 617 *A.*2d 664 (App.Div. 1992). There, the issue was whether the insurer of an owner of rental or leased vehicles, could restrict the coverage afforded under its liability policy to the "owner interest," thereby excluding coverage for the rentees of the vehicles. *Id.* at 2, 617 *A.*2d 664. We concluded that the Legislature's intention to mandate minimum levels of insurance on all vehicles operated in this state, including rental/leased vehicles, required that "policies of insurance filed in compliance with *N.J.S.A.* 45:21–2 and –3 be required to provide the coverage to lessees without exception.... [T]o the extent [that the carrier's policy] endorsement attempted to carve out or restrict required statutory coverage under *N.J.S.A.* 45–21–3, that it constitutes an illegal escape clause." *Id.* at 4, 617 *A.*2d 664.

The reasoning of *Selective* and *Ambrosio* are fully applicable here. In those cases the leasing company actually obtained liability insurance, but with the illegal "escape" provisions. In this case, Avis has no policy, relying instead on the language in its rental agreement. Such language, we conclude, is similarly ineffective to restrict or avoid the mandatory omnibus coverage required by the statute. *Allstate Ins. Co.,* *supra,* 195 *N.J.Super.* at 602–06, 481 *A.*2d 298 (provision in rental contract excluding persons under age twenty-one from definition of authorized operators ineffective to avoid coverage for permissive user of car). Thus, we conclude that Avis' rental contract with Brown is not effective to the extent that it seeks to render Avis' self-insurance coverage excess.

█ Avis also argues, as a fall-back position, that its coverage should be co-primary with Farmers, due to the presence of "excess" provisions in both documents, that is, the Farmers policy and Avis' lease agreement with Brown. *Cosmopolitan Mut. Ins. Co., supra,* 28 *N.J.* at 562, 147 *A.*2d 529. Brown's response is that the rule established by *Cosmopolitan* only comes into play when there are two *insurance policies* to compare. *See Universal Underwriters, supra,* 308 *N.J.Super.* at 418–19, 706 *A.*2d 217

(where the excess coverage provisions of "two policies are mutually repugnant, they are to be disregarded" and the carriers "stand on an equal footing, each sharing the payment of liability equally until the limit of the smaller policy is exhausted."). We agree that the rule of *Cosmopolitan* does not govern in this case. Here, Avis does not present an insurance policy with an excess provision to compare with Brown's Farmers policy, since Avis only has a certificate of self-insurance that itself contains no terms of any kind. Nevertheless, Avis says that the Farmers policy should be compared with its rental agreement, which does contain an excess clause. Judge Donaldson rejected that argument, concluding that there are not "two policies here. You cannot read the rental agreement as being an insurance policy." We agree. The only "policy" possessed by Avis is its self-insurance certificate. As we said in *White, supra,* 240 *N.J.Super.* at 431, 573 *A.*2d 513, the "decision to act as a self-insurer and secure the applicable New Jersey certificate was the functional equivalent of [the rental company] writing a separate insurance policy covering itself." However, while it is beyond dispute that a self-insurance certificate constitutes a policy, *see Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.,* 119 *N.J.* 402, 413, 575 *A.*2d 416 (1990), there is no support for Avis' position that the rental contract between it and its lessee becomes a part of that "policy." As a result, the excess provision in the rental agreement cannot be compared with the Farmers excess provision. The self-insurance certificate/policy being silent, there is only the Farmers provision, making its policy excess and, accordingly, the Avis coverage primary.

To the extent that *Agency Rent–A–Car, Inc. v. Indemnity Insurance Company of North America,* 268 *N.J.Super.* 319, 324–25, 633 *A.*2d 975 (App.Div.1993), relied upon by our dissenting colleague, suggests otherwise, we do not agree. *Agency* states that "plaintiff is entitled to establish and abide by contractual limitations for indemnification to the extent they are not inimical with the law," citing *Allstate Insurance Company, supra,* 195 *N.J.Super.* at 606, 481 *A.*2d 298. 268 *N.J.Super.* at 324, 633 *A.*2d 975. In fact, the holding of *Allstate,* to which we have referred

earlier, was only that a provision in the rental contract that *did* operate to restrict or lessen the omnibus statutory coverage was *ineffective.* 195 *N.J.Super.* at 604–05, 481 *A.*2d 298. Such a holding does not support the opposite conclusion, that any rental contract provisions that are not "inimical with the law" must be given effect.

Further, Brown argues that to accept Avis' position that the rental agreement is itself a form of insurance policy would place Avis' rental agents in the position of selling insurance without being licensed to do so. That argument has some merit. Indeed, it would appear that by offering the lessee optional coverages for an additional fee, which Avis admits is routinely the case,[5] the agents may even now be engaging in a prohibited activity. *N.J.S.A.* 17:22A–29,–30; *N.J.A.C.* 11:17–2.2(a)4.[6] In any event, we need not resolve that question in order to decide this case.

We hold that Avis must, when acting as a self-insurer, in the circumstances presented here, provide primary coverage to its lessee, Brown, and cannot avoid doing so by relying upon terms contained in its rental contract, which does not constitute an insurance policy for purposes of comparison with a policy covering its lessee personally that contains an excess provision.

We need not decide the limits of Avis' responsibility, that is whether, as Avis argues, it is only to the limit of the minimums required by statute, *N.J.S.A.* 45:21–3, or is unlimited, as Brown contends, citing *Ryder/P.I.E. Nationwide.* Here, the total amount for which Avis was held responsible fell within the statutory minimum.

---

[5] The rental agreement indicates that both "personal accident insurance" and "personal effects protection" insurance is made available to the renter for a stated per diem charge.

[6] The necessity for a licensed professional to sell insurance is quite apparent. Could a rental car agent respond accurately if the customer inquired whether additional insurance was needed in light of other policies available? We have substantial doubt on that score.

Having found Avis' coverage to be primary, the reimbursement for attorneys' fees and costs, including the amount paid in settlement of the Robinson claim, were properly awarded and require no discussion. *R.* 2:11–3(e)(1)(E). Finally, in light of our conclusion, there is no merit to Avis' cross-appeal that was predicated upon a finding in its favor on the main appeal.

Affirmed.

WECKER, J.A.D., dissenting.

I respectfully dissent. I conclude that Avis Rent A Car Systems, Inc. (Avis), as a self-insured car rental company, owes its rental customer, Richard Brown, Jr. (and the public), the minimum mandatory liability coverage as set forth in its rental agreement, the same coverage required for all New Jersey auto insurance policies pursuant to *N.J.S.A.* 39:6A–3.[1] I also conclude that the "other insurance" clause of the rental agreement is effective. Because Brown's contracts with both Avis and his own carrier contain "other insurance" clauses, making the Avis coverage excess when the driver is insured under another policy, the two insurers (Brown's personal carrier and Avis as a self-insured) are co-primary and share liability equally between them.

I reason that so long as New Jersey permits car rental companies to self-insure for their renters' liability to third parties, *see* *N.J.S.A.* 39:6–52 and *N.J.S.A.* 45:21–8; and so long as New Jersey does not require auto insurance policies issued to New Jersey car rental companies to provide primary coverage for their renters' liability, *see Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28 *N.J.* 554, 563, 147 *A.*2d 529 (1959), there is no reason for this court to invalidate the coverage limits of the rental agreement and to impose upon the self-insured car rental company an obligation

---

[1] Brown's personal auto insurance carrier, Farmers Insurance Company, is the real party in interest, having provided a defense and paid the settlement of plaintiffs' claim against Brown. Because the settlement was well below the mandatory minimum, the amount of self-insured coverage is not directly in issue.

to provide more than would be required if the company had purchased a minimum insurance policy.[2]

In *Cosmopolitan, supra,* 28 *N.J.* at 554, 147 *A.*2d 529, the Supreme Court noted that the statutory requirement, "that one engaged in the business of renting motor vehicles shall file ... a policy of liability insurance," serves the purpose of "protect[ing] the public from the irresponsibility of persons operating hired motor vehicles on our highways." *Id.* at 563, 147 *A.*2d 529. *"The statute does not require that a policy issued in compliance therewith be primary insurance." Ibid.* (Emphasis added). Moreover, "[t]he question of whether the particular insurance is primary or excess is not a public matter but merely a concern of the insurance companies which have extended coverage to the risk." *Ibid.*

I do not share the majority's view, and see no reason to hold, that the contract between Avis and Brown, stating that the coverage provided by Avis shall be limited to the statutorily-required minimums ($15,000/$30,000/5,000) and shall be excess to Brown's personal policy coverage, is ineffective or unenforceable. That contract provides the renter with a clear, unambiguous statement of the coverage he is getting, as well as its limits. Whether that protection comes from an independent insurance carrier (as it would if the car he rented happened to be one registered in New Jersey) or from Avis as a self-insurer, should make no difference. The contract and not an insurance policy is provided to the renter, and the contract gives notice of the dollar limits of coverage to be provided, irrespective of the source.

The question before us is essentially the same question we addressed in *Agency Rent–A–Car, Inc. v. Indemnity Ins. Co.,* 268 *N.J.Super.* 319, 324, 633 *A.*2d 975 (App.Div.1993): Does *Ry-*

---

[2] We are told that the car Brown rented in New Jersey was registered in Pennsylvania; that Avis self-insures its Pennsylvania registered cars pursuant to Pennsylvania motor vehicle and insurance laws; and that Avis cars registered in New Jersey are covered by an insurance policy issued by CNA which provides the minimum mandatory $15,000/$30,000/$5,000 coverage.

*der/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., Inc.,* 119 *N.J.* 402, 575 *A.*2d 416 (1990), compel the conclusion that the self-insured car rental company cannot, by contract with the renter, limit the amount and terms of its coverage to the same minimums required (and terms permitted) for a rental company that purchases a policy of insurance? The majority concludes that Avis's contract with its customer cannot define the terms of its self-insurance obligation. I disagree.

In *Agency Rent–A–Car,* upholding the car rental company's contractual limitation of coverage to the statutory minimum, Judge Dreier quoted *Ryder, supra,* 119 *N.J.* at 413, 575 *A.*2d 416: " '[A] self-insurance certificate [is treated] as the equivalent of a policy of insurance.' " Judge Dreier continued:

> *N.J.S.A.* 45:21–3 (as amended) defines the mandatory liability of a self-insured motor vehicle lessor. Plaintiff is entitled to utilize these limits. Furthermore, plaintiff is entitled to establish and abide by contractual limitations for indemnification to the extent they are not inimical with the law. *See Allstate Ins. Co. v. Royal Globe Ins. Co.,* 195 *N.J.Super.* 598, 606, 481 *A.*2d 298 (App.Div.1984).
>
> >[268 *N.J.Super.* at 324–25, 633 *A.*2d 975.]

We concluded that the rental company's self-insurance was therefore "subject to the $15,000/$30,000/$5,000 limits established by its contract [with the renter] and by *N.J.S.A.* 45:21–3, as amended by *N.J.S.A.* 39:6A–3." 268 *N.J.Super.* at 325, 633 *A.*2d 975.

We explained in *Agency Rent–A–Car* that *N.J.S.A.* 45:21–2 and –8, read together, permit a car rental company to self-insure in order to provide the required liability insurance on cars it rents out; *N.J.S.A.* 45:21–3 sets forth the minimum amounts required for such liability insurance; and because by definition there is no insurance policy setting forth those limits, a contract between the rental company and the renter is effective to do so. I see no reason to reach a different result here.

In *Ryder,* the Court held that a self-insurer's liability for an additional insured in "loading and unloading" cases was not limited to the minimum amount of compulsory motor vehicle insurance. I conclude as we did in *Agency Rent–A–Car* that *Ryder* is distinguishable.

In determining whether *Ryder* precludes the car rental company from limiting the amount and terms—not the fact—of coverage here, I have reviewed the Court's reasoning in *Ryder*. The Court first noted that Ryder's obligation to cover an additional insured in a loading and unloading case can arise from the express language of an insurance policy; but the obligation *to provide coverage* for an accident in the course of loading and unloading arises by statute where use of a motor vehicle is involved, and its scope therefore cannot be limited by contract. 119 *N.J.* at 407–08, 575 *A.*2d 416 (citing *Bellafronte v. General Motors Corp.*, 151 *N.J.Super.* 377, 376 *A.*2d 1294 (App.Div.), *certif. denied,* 75 *N.J.* 533, 384 *A.*2d 513 (1977)). Still referring to liability for loading and unloading involving use of a motor vehicle, the court said:

> Because of statutorily-imposed omnibus requirements, any contractual attempt to exclude coverage for an additional insured will be held invalid. Moreover, all parties subject to omnibus coverage requirements—both self-insurers and those with liability policies—must provide coverage. What *Bellafronte* does not address, however, is the limitation, if any, on the *amount* of coverage that an insurer must provide in the context of a loading and unloading accident.[3]
>
> >[119 *N.J.* at 408, 575 *A.*2d 416.]

Justice Garibaldi, writing for the Court in *Ryder,* continued:

> Our cases construing liability policies do not suggest that minimum amounts of compulsory liability insurance, *N.J.S.A.* 39:6B–1, limit an insurer's coverage obligation *for loading and unloading accidents. Moreover, common sense dictates that an insurer's liability,* having contractual and statutory roots, and not stemming from its own negligence, *is not unlimited. Rather, our cases suggest that the limit of an insurer's liability is the amount of that insurer's liability policy.*
>
> >[*Id.* at 408–09, 575 *A.*2d 416 (emphasis added).]

The Court recognized that the insurance policy, and not the statute setting the minimum required motor vehicle insurance coverage, determines the limit of an insurer's liability. *Ibid.* By

---

3 That obligation to cover loading and unloading when motor vehicle "use" is involved, is now found in *N.J.S.A.* 39:6B–1 and 39:6A–3. *See Pisaneschi v. Turner Constr. Co.*, 345 *N.J.Super.* 336, 343, 785 *A.*2d 50 (App.Div.2001) (citing *Kennedy v. Jefferson Smurfit Co.*, 147 *N.J.* 394, 403, 688 *A.*2d 89 (1997)). *Ryder* cited *N.J.S.A.* 39:6–46(a), repealed by *L.* 1979, *c.* 169, § 5, effective August 9, 1979, which *Bellafronte* relied upon, along with *N.J.S.A.* 39:6B–1, for the proposition that mandatory coverage for "use" of a motor vehicle included loading and unloading the vehicle.

definition, a self-insured has no policy to which to point for a declaration of its coverage limits or terms.

The Court therefore looked to *N.J.S.A.* 39:6–52, the self-insurance statute, and case law, to determine the amount of coverage owed by the self-insured party. *Id.* at 409, 575 *A.*2d 416. The Court noted that "[w]ith respect to omnibus coverage requirements, New Jersey courts have held that a self-insurer's coverage obligations are co-extensive with the obligations of those possessing liability policies." *Id.* at 410, 575 *A.*2d 416. The Court explicitly noted that the basis for that conclusion "was the view that with respect to the *scope* of coverage obligations, a certificate of self-insurance is the functional equivalent of a policy of insurance." *Id.* at 411, 575 *A.*2d 416. The examples cited by the Court related to the type of coverage and persons covered; not to the amount of the coverage.

Unlike Avis in this case, Ryder was not a car rental company. Thus in *Ryder* the Court did not have before it the question that is before us: whether a rental company can by contract limit the amount and terms of self-insured liability coverage it provides to its customer. Nor did it address the question whether by contract with its customer, Harbor Bay, the self-insured Ryder could have effectively limited its mandated (though self-insured) coverage for loading and unloading accidents. The car rental company here does not rely upon the rationale that the Court explicitly rejected in *Ryder*, that is, "that Ryder's indemnity bond [submitted in support of its application for approved self-insured status] is evidence of the extent of its liability." 119 *N.J.* at 413, 575 *A.*2d 416. I conclude that *Ryder* is not determinative here.

The majority finds the provision in the car rental agreement defining its coverage as excess to be "a violation of public policy." Op. at 342, 848 A.2d at 891. I fail to see any public policy that is violated, so long as auto insurance policies issued to car rental companies are permitted to provide excess coverage in cases where "other insurance" is available to the driver. Nor do I perceive the evil that my colleagues perceive. There is no improp-

er shifting of burdens, a proposition for which the majority cites *White v. Howard,* 240 *N.J.Super.* 427, 573 *A.*2d 513 (App.Div.), *certif. denied,* 122 *N.J.* 339, 585 *A.*2d 354 (1990). *White* is distinguishable, in that the self-insured rental company in that case issued a contract that purported to provide *no* coverage to renters, rather than the statutory minimum coverage. Indeed, if *White* stood for the proposition for which the majority cites that case, its author, who also wrote our opinion in *Agency,* presumably would have acknowledged a change of heart.

The majority relies upon several cases that reject as an "illegal escape clause" certain attempts by an insurance company or a self-insured to exclude coverage entirely to a particular class of persons. *E.g., Ambrosio v. Affordable Auto Rental, Inc.,* 307 *N.J.Super.* 114, 704 *A.*2d 572 (App.Div.1998) (excluding renters with their own mandatory minimum insurance from the definition of an "insured"); *Selective Ins. Co. v. Charter Risk Retention Group Ins. Co.,* 261 *N.J.Super.* 1, 617 *A.*2d 664 (App.Div.1992) (limiting coverage to the "owner interest," thereby excluding all coverage for renters). Op. at 343–45, 848 *A.*2d at 892–93. The circumstances in those cases are not comparable to those before us. The Avis contract does not attempt to exclude coverage for any class of persons which otherwise would be authorized to drive the rental car. Nor does the Avis contract "restrict or avoid the mandatory omnibus coverage required by statute," as the majority concludes. Op. at 344, 848 *A.*2d at 893. Avis's contractual limitation of liability cannot fairly be deemed an "illegal escape clause," as in *Ambrosio, Selective, Rao v. Universal Underwriters Ins. Co.,* 228 *N.J.Super.* 396, 549 *A.*2d 1259 (App.Div.1988) (insurance policy issued to car rental company cannot preclude all coverage for renters who have their own insurance; such a provision is an illegal escape clause), or *Allstate Ins. Co. v. Royal Globe Ins. Co.,* 195 *N.J.Super.* 598, 481 *A.*2d 298 (App.Div.1984) (insurance policy provision limiting class of drivers covered was unenforceable).

The majority quotes a South Dakota case, *Auto Owners Ins. Co. v. Enterprise Rent–A–Car Co.—Midwest,* 663 *N.W.*2d 208, 211 (S.Dak.2003): "[Those] who choose to self-insure are held to the same duties as those who do not." I agree. But they are not fairly held to a greater duty just because they choose to carry the risk themselves rather than purchase an insurance policy. In that South Dakota case, the self-insured car rental company was required by statute to provide primary coverage up to the mandatory minimum. Thus its rental contract purporting to provide only excess coverage was ineffective.

To the extent that the rationale behind New Jersey's insurance requirement and the allowable self-insurance alternative is to protect the public, the rule the majority adopts does not seem likely to serve that interest. The net effect of applying *Ryder* to this car rental company is to force the company to purchase auto insurance for all vehicles rented in New Jersey. We can assume the company will purchase only the minimum required amounts (as it now does for its New Jersey registered cars). Thus neither an injured third party nor the renter's insurance carrier will gain anything over what each would have under the rule I would adopt. The insurance industry, however, will have increased its market, and the premium costs [4] are likely to be passed on to the auto renting public.

I would treat Avis's self-insurance, on terms provided by its contract with its customers, on a par with an actual insurance policy. The net result in this case is that Avis's coverage (by statute and contract) and Brown's coverage (by the Farmers' insurance policy), each of which includes an "other insurance" clause that effectively defines its coverage as excess, are "mutually repugnant." *See Cosmopolitan, supra,* 28 *N.J.* at 562, 147 *A.*2d 529, and *Universal Underwriters Ins. Co. v. CNA Ins. Co.,* 308 *N.J.Super.* 415, 418–19, 706 *A.*2d 217 (App.Div.1998). Each there-

---

[4] If the costs of "self-insuring" exceeded the premiums that would be due, car rental companies likely would not choose to self-insure.

fore would "shar[e] the payment of liability equally until the limit of the smaller policy is exhausted." 308 *N.J.Super.* at 419, 706 *A.*2d 217. *See also Hanco v. Sisoukraj*, 364 *N.J.Super.* 41, 46, 834 *A.*2d 443 (App.Div.2003) (two insurance policies, both excess, are treated as co-primary and share liability equally). By honoring the "other insurance" provision of the driver's own policy, and holding that the self-insurer and the driver's carrier share liability equally, the majority's concern—that "Avis escapes any responsibility for providing insurance coverage if the renter has other liability insurance available"—is obviated.

I would reverse.